EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Raúl E. Casasnovas Balado, et al<br><br>    Recurrido<br><br>             v.<br><br>UBS Financial Services, Inc, et al<br><br>    Peticionarios<br><br>Puerto Rico Fixed Income Fund, Inc. et al<br><br>    Peticionarios | Certiorari<br><br>2017 TSPR 164<br><br>198 ____ |

Número del Caso: CC-2017-427

Fecha: 23 de agosto de 2017

Tribunal de Apelaciones:  Región Judicial de San Juan

Abogados de los peticionarios:

    Lcdo. Salvador Antonetti Stutts
    Lcdo. Guillermo Bobonis González
    Lcdo. Enrique Figueroa Llinas
    Lcdo. Ubaldo Fernández Barrera
    Lcdo. Mauricio Muñiz Luciano
    Lcda. Sylvia Arizmendi López de Victoria
    Lcdo. Rafael Escalera Rodríguez
    Lcda. Alicia Vergne Ramirez
    Lcdo. José Sánchez Castro
    Lcdo. Gustavo Adolfo Pabón Rico

Abogados de los recurridos:

    Lcda. Verónica Irizarry Báez
    Lcdo. Francisco Pujol Meneses
    Lcdo. Harold Vicente González
    Lcdo. Harold Vicente Colón
    Lcda. Francis C. Healy
    Lcda. Emily Komlossy
    Lcdo. Ross Appe
    Lcdo. Mark Gardy
    Lcda. Meagan Farmer

Abogado del Amigo de la Corte:

    Lcdo. Carlos Díaz Olivo

Materia: Derecho Corporativo y Probatorio: Incorporación de criterios, conforme a la doctrina de Garner, para determinar si procede la excepción fiduciaria al privilegio abogado-cliente en el contexto de una relación accionista-corporación.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Raúl E. Casasnovas Balado *et al.* <br><br> Recurridos <br><br> v. <br><br> UBS Financial Services, Inc. *et al.* <br><br> Peticionarios <br><br> Puerto Rico Fixed Income Fund, Inc. *et al.* <br><br> Peticionarios | **CC-2017-0427** | C*ertiorari* |

Opinión del Tribunal emitida por el Juez Asociado SEÑOR FELIBERTI CINTRÓN

(Regla 50)

En San Juan, Puerto Rico, a 23 de agosto de 2017.

El presente caso nos brinda la oportunidad de atender, por primera vez en nuestra jurisdicción, una situación particular de derecho probatorio en el contexto de una acción derivativa. En específico, debemos determinar si procede incorporar en nuestro ordenamiento jurídico la doctrina establecida en Garner v. Wolfinbarger, *infra*. Para ello, tomamos en consideración que una corporación con fines de lucro tiene un deber de fiducia frente a sus accionistas y que éstos son los últimos beneficiarios de las gestiones de este tipo de entidad jurídica.[1] Además, tenemos presente que el caso ante nos involucra a varias corporaciones que tienen sus respectivos accionistas y, en ocasiones, representantes

---

[1] Para un mejor entendimiento de lo que conlleva una acción derivativa y el deber de fiducia, véanse Multinational Ins. v. Benítez y otros, 193 DPR 67 (2015) y Rivera Sanfeliz *et al*. v. Jta. Dir. FirstBank, 193 DPR 38 (2015).

legales distintos. Por lo tanto, estos privilegios le pueden pertenecer a grupos de accionistas diferentes. Para poder atender adecuadamente este asunto, debemos dirigir nuestra mirada al estado de Delaware, de donde surge, en gran medida, nuestro derecho corporativo y donde ya se ha atendido este tipo de controversia.[2] Por los fundamentos que exponemos a continuación, acogemos la doctrina, tomando en consideración las particularidades del presente caso.

## I

El caso de epígrafe fue instado por nueve (9) accionistas (parte recurrida)[3] de varias corporaciones de fondos mutuos, en contra de UBS Financial Services, Inc. (UBS), diversas entidades afiliadas a UBS, los propios fondos y sus respectivos directores y exdirectores, entre otros (en conjunto, parte peticionaria). La reclamación fue catalogada como una acción derivativa en beneficio de los referidos fondos. La parte recurrida alegó, entre otras cosas, que la parte peticionaria violó sus deberes de fiducia y de buena fe al crear un esquema *ultra vires* para defraudar a los accionistas de los fondos.

El 7 de abril de 2016, el Tribunal de Primera Instancia emitió un dictamen en el que aprobó una *Orden de Confidencialidad* con el propósito de prohibirle a la parte recurrida la divulgación de secretos de negocios a terceros.

---

[2]    Véase <u>Rivera Sanfeliz *et al*. v. Jta. Dir. FirstBank</u>, *supra*; <u>Lloréns *et al*. v. Arribas *et al*.</u>, 184 DPR 32 (2011).

[3]    Durante el pleito, algunos demandantes desistieron de su reclamación, por lo que la parte recurrida quedó compuesta por Doris López García; Reynaldo Quintana Latorre; Manuel Porro como Síndico del Plan de Retiro Manuel Porro; Romualdo Rivera; Tonos Aurimir Arocho; Manuel Martínez Umpierre; Glafira Porro Vizcarra; Blanca M. Ortega Torres y el Fideicomiso Punta Gorda.

Ello promovió que se intercambiara información de manera liberal, rápida y efectiva entre las partes, en consideración al gran volumen de documentos que se espera se produzcan en el trámite del presente pleito.

Tras atender varias mociones sobre el descubrimiento de prueba, el 17 de junio de 2016, el foro primario ordenó que no se entregaran documentos con tachaduras. La parte peticionaria solicitó la reconsideración de dicha orden debido a que las tachaduras tenían el propósito de proteger información confidencial, el privilegio abogado-cliente y el producto del trabajo de los abogados. Explicó que se produjo una bitácora de privilegios sobre los documentos en cuestión. La parte recurrida se opuso y argumentó que los documentos no eran privilegiados y que la bitácora de privilegios sometida por UBS era insuficiente o defectuosa. La parte peticionaria presentó una réplica en la que suplicó que se ordenara a los litigantes a realizar esfuerzos razonables y de buena fe para resolver la controversia, conforme a la Regla 34.1 de Procedimiento Civil, 32 LPRA Ap. V (2010), previo a acudir al tribunal respecto a la misma, de ser necesario.

Así las cosas, el 26 de agosto de 2016, la parte recurrida sometió una moción urgente en la que argumentó que la doctrina de Garner provee una excepción al privilegio abogado-cliente en las acciones derivativas por razón del deber de fiducia que las corporaciones tienen con sus accionistas.[4] Informó, además, que las partes se reunieron

---

[4] En Garner v. Wolfinbarger, 430 F.2d 1093 (5to Cir. 1970), se creó una excepción al privilegio abogado-cliente en acciones derivativas por razón del

para resolver asuntos de descubrimiento de prueba, pero que la reunión no fue productiva debido a que concluyeron que existía una controversia de derecho sobre la aplicabilidad de la doctrina de Garner que debía ser resuelta por el tribunal.[5] La parte peticionaria presentó su oposición en la que señaló que, durante la referida reunión, intentó resolver las controversias sobre la bitácora y los documentos en controversia, pero que la parte recurrida se negó amparada en la doctrina de Garner.

Por otro lado, el 8 de septiembre de 2016, la parte recurrida sometió una moción suplementaria en la que informó que uno de los representantes legales de UBS, el Lcdo. Paul J. Lockwood, fue amonestado por un tribunal de Delaware por producir una bitácora de privilegios defectuosa, por lo que dicho foro determinó que la parte renunció a los privilegios reclamados y, como sanción, se ordenó la producción de todos los documentos en disputa.[6] Afirmó que el licenciado Lockwood utilizó el mismo tipo de bitácora en el caso de marras y, consecuentemente, sostuvo que debe determinarse que UBS no alegó cabalmente el privilegio abogado-cliente.[7] La parte peticionaria se opuso, entre otras cosas, a la

---

deber de fiducia que tienen los directores de una corporación para con sus accionistas. Para aplicar dicha doctrina, los accionistas deben demostrar que tienen causa suficiente (*good cause*) para descubrir esa información privilegiada.

[5] Ambas partes entienden que la doctrina de Garner podría ser acogida en nuestra jurisdicción. Sin embargo, la parte peticionaria disputó su aplicación al presente pleito debido a que la parte recurrida no acreditó justa causa, necesidad sustancial ni los demás indicadores establecidos bajo la doctrina.

[6] Véase Klig v. Deloitte LLP, C.A. Núm. 4993-VLC (Del. Ch. 2010). En dicho caso, un foro primario de Delaware tuvo ante sí una bitácora de privilegios con descripciones genéricas o repetitivas sobre la materia privilegiada.

[7] Señaló, además, que no se debía permitir suplementar las bitácoras en esa etapa de los procedimientos.

aplicación de este enfoque (tipo *blanket waiver*) utilizado por un foro primario en Delaware.

El 15 de noviembre de 2016, el Tribunal de Primera Instancia le ordenó a la parte peticionaria someter una copia de los documentos en cuestión en sobres sellados para ser examinados en cámara. Ésta compareció en cumplimiento con dicha orden.[8] El 16 de diciembre de 2016, dicho foro celebró una vista en la que manifestó que determinaría cuáles documentos debían ser protegidos. A su vez, las partes expusieron sus respectivas posturas en cuanto a la doctrina de Garner.[9]

El 20 de diciembre de 2016, el foro primario emitió una Resolución y Orden en la que dispuso del asunto probatorio ante su consideración. Determinó que, por razón del deber de fiducia impuesto por ley a UBS,[10] no procede invocar el privilegio abogado-cliente frente a los fondos y sus accionistas.[11] Al acoger y aplicar la doctrina de Garner, señaló que la información solicitada no puede ser obtenida de otra fuente que no sea la propia parte peticionaria y que esta información es determinante para que la parte recurrida tenga la oportunidad de probar sus alegaciones, por lo que el

---

[8]    Nótese que el Tribunal de Primera Instancia tuvo ante sí todos los documentos en controversia, por lo que no dependió exclusivamente de la bitácora de privilegios.

[9]    Ahora bien, de los autos no surge que se haya discutido en detalle sobre los indicadores o *indicia* que requiere la doctrina de Garner.

[10]    Según fundamentó el foro primario, este deber fiduciario surge del Reglamento 6078 de la Ley Uniforme de Valores, Oficina del Comisionado de Instituciones Financieras, Sec. 25.1.

[11]    Razonó que, debido al deber de fiducia de UBS, los accionistas son los verdaderos clientes y beneficiarios de la asesoría legal recibida por la parte peticionaria.

privilegio invocado en este caso violenta el acceso adecuado a la justicia. Además, el Tribunal de Primera Instancia indicó que le correspondía a UBS demostrar la existencia de los privilegios reclamados, los cuales se deben interpretar restrictivamente. En esa línea, determinó que las listas y bitácoras sometidas por la parte peticionaria no fueron útiles debido a que no describían con suficiente precisión o particularidad la razón específica del privilegio reclamado. Por lo tanto, ordenó la producción de los documentos en controversia.

El 9 de enero de 2017, la parte peticionaria presentó una moción de reconsideración en la que argumentó, entre otros asuntos, que el tribunal debía evaluar cada documento en particular para determinar si existía causa suficiente (*good cause*) para exceptuar el privilegio. También alegó que ninguno de los recurridos era accionista de UBS, por lo que no se debe aplicar la doctrina de Garner en este caso. Además, argumentó que dicha doctrina no se debe extender al privilegio del producto del trabajo del abogado. Finalmente, insistió en que la bitácora en cuestión era adecuada. No obstante, el foro primario proveyó *No Ha Lugar* a la solicitud de reconsideración.

Inconforme, la parte peticionaria recurrió ante el Tribunal de Apelaciones y objetó la aplicación de la doctrina de Garner en nuestra jurisdicción, así como el alcance de la misma en el contexto de este litigio. En particular, señaló que el foro primario erró al aplicar liberalmente la doctrina, en lugar de evaluar, restrictivamente, los

indicadores o la *indicia* de causa suficiente (*good cause*) establecidos jurisprudencialmente. También alegó que el Tribunal de Primera Instancia erró al extender la doctrina de Garner al privilegio del producto del trabajo del abogado. Finalmente, argumentó que la bitácora aquí envuelta era adecuada y suficiente para reclamar los privilegios en cuestión y que, en la alternativa, se le debió conceder una oportunidad para suplementarla.

El 15 de marzo de 2017, el foro apelativo intermedio dictó una Sentencia confirmatoria. En primer lugar, aclaró que UBS consintió a la aplicación de la doctrina de Garner en nuestra jurisdicción. En segundo lugar, evaluó los indicadores o la *indicia* de la doctrina para concluir que procede la producción de los documentos. Para ello, tomó en consideración la naturaleza de la reclamación, la relación fiduciaria entre las partes, la alegada malversación de los fondos y de las inversiones efectuadas por UBS, la necesidad de la información para probar las alegaciones de la Demanda Enmendada,[12] el hecho de que la información estaba en el poder exclusivo de la parte peticionaria, que no estamos ante una expedición de pesca y que cualquier secreto de negocios estaba debidamente protegido por la *Orden de Confidencialidad*. Además, puntualizó que en la Demanda Enmendada se alegó que el descubrimiento de prueba demostraría que UBS actuó como *alter ego* en sus relaciones

---

[12] El foro apelativo intermedio no albergó duda de que la información en cuestión era pertinente para probar las alegaciones de la parte recurrida. No obstante, la parte peticionaria alegó ante nos que los foros recurridos no evaluaron los documentos individualmente, sino en forma general.

financieras en Puerto Rico para inducir a la parte recurrida a comprar acciones de los fondos y evitar que las vendieran. En fin, concluyó que se cumplió con los criterios de necesidad y especificidad de la doctrina de Garner y que su aplicación en el presente caso era razonable.

El Tribunal de Apelaciones consideró que la doctrina de Garner "es una herramienta necesaria y de gran utilidad para promover y garantizar la eficiencia y sana administración de la justicia en esto[s] tipos de casos". En esa línea, determinó que era justo que la parte recurrida tuviera acceso a las asesorías recibidas por la parte peticionaria "**en cuanto se relacionen con las inversiones de los Fondos y la información que se le ofrecía a los accionistas para retenerlos como accionistas y venderles otros instrumentos de inversión**". (Énfasis nuestro).

Por otro lado, el foro apelativo intermedio coincidió con el Tribunal de Primera Instancia en cuanto a que la bitácora de privilegios provista por la parte peticionaria no fue útil para evaluar la existencia de los mismos. Además, tras examinar varios de los documentos en controversia, el Tribunal de Apelaciones determinó que éstos no son privilegiados. En cuanto al privilegio del producto del trabajo del abogado, el Tribunal de Apelaciones concluyó que la bitácora no contiene documentos relacionados con la asesoría legal o impresiones mentales de abogados sobre las estrategias de un litigio.

Inconforme, el 22 de mayo de 2017, la parte peticionaria presentó ante nos el recurso de referencia y señaló que el

Tribunal de Apelaciones erró al: 1) adoptar la doctrina de Garner ampliamente, al exigir el descubrimiento de todos los documentos pertinentes a alegaciones de violaciones a deberes de fiducia;[13] 2) extender la doctrina de Garner al privilegio del producto del trabajo del abogado a pesar de que la bitácora especificaba que ciertos documentos contenían impresiones mentales de su representación legal; 3) realizar un análisis superficial y generalizado en cuanto a la necesidad de obtener cada documento en particular y la indisponibilidad de la información en otras fuentes; 4) extender la doctrina de Garner a documentos relacionados a intereses independientes de UBS que no están relacionados a los fondos, y 5) violar el derecho constitucional de la parte peticionaria al debido proceso de ley y a obtener asesoramiento legal. En síntesis, consideró que la doctrina en cuestión debe aplicarse de forma muy restrictiva, de conformidad a la jurisprudencia de otras jurisdicciones.

Ese mismo día, la parte peticionaria solicitó autorización para someter ciertos documentos en un sobre sellado para inspección en cámara, con el propósito de salvaguardar la confidencialidad y el carácter privilegiado de los mismos.[14]

El 1 de junio de 2017, la parte recurrida sometió su *Oposición a Expedición del Auto*. Explicó que UBS es quien posee y retiene la prueba necesaria para demostrar las

---

[13]   En cuanto al primer señalamiento de error, la parte peticionaria esbozó que se limita a solicitar que se expida el recurso para definir el alcance apropiado de la excepción fiduciaria en Puerto Rico, de manera que haya un equilibrio adecuado entre los intereses involucrados.

[14]   El sobre contiene 8 de los cerca de 10,000 documentos en disputa.

alegaciones de la Demanda Enmendada y que, al descubrirse la misma, el litigio se resolvería. Afirmó que los foros recurridos realizaron un profundo, meticuloso y bien razonado análisis y tomaron medidas apropiadas para proteger la confidencialidad de la información solicitada. Aclaró que los indicadores o la *indicia* de la doctrina de Garner fue utilizada por los foros recurridos y contribuyeron a determinar que había causa suficiente (*good cause*) para divulgar la información. Por lo cual, entendió que no era necesario analizar los documentos individualmente. Reiteró, además, que la bitácora aquí envuelta es deficiente, ya que no justifica la retención de la información y que, consecuentemente, se renunció a los privilegios en cuestión.[15] En cuanto al privilegio del producto del trabajo del abogado, argumentó que, para que proceda, tiene que tratarse de asesoría legal durante o en anticipación a un litigio y no en el curso ordinario de los negocios. Por otro lado, señaló que la parte peticionaria alegó, por primera vez en alzada, una nueva teoría legal de índole constitucional. De todas formas, argumentó que el privilegio abogado-cliente no es de índole constitucional.

El 14 de junio de 2017, compareció la U.S. Chamber of Commerce (USCC) y solicitó autorización para presentar un

---

[15] Aclaramos que la parte peticionaria estuvo dispuesta a resolver la controversia sobre el descubrimiento de prueba, conforme lo requiere la Regla 34.1 de Procedimiento Civil, 32 LPRA Ap. V (2010), y a proveer una bitácora suplementaria. Además, sometió ante los foros recurridos toda la documentación en disputa para un examen en cámara. Por lo cual, adelantamos que no renunció al privilegio reclamado.

alegato en calidad de *amicus curiae*.[16] Propuso presentar su insumo e inquietudes en torno a la adopción de la doctrina de Garner en Puerto Rico, alegando que esto podría acarrear graves consecuencias para la economía del país.[17] En su escrito, la USCC aclaró que un fondo mutuo no es una corporación tradicional y, por lo tanto, merece consideraciones particulares. Indicó que un fondo mutuo se caracteriza por la separación que existe entre éste y la compañía que lo administra y lo que los ata es una relación contractual.[18] Argumentó que, debido a su estructura particular, se debe evaluar si los directores y oficiales de la compañía de administración tienen deberes fiduciarios hacia los accionistas de los fondos mutuos. Señaló que, aunque la compañía de administración tiene un deber fiduciario de administrar el fondo mutuo con responsabilidad y diligencia, esta obligación no puede extenderse irreflexivamente a sus accionistas. Opinó que, al no tratarse de una entidad corporativa típica, la controversia sobre el descubrimiento de prueba en el presente pleito no puede manejarse en el contexto de una acción derivativa y, consecuentemente, no debe aplicarse la doctrina de Garner al

---

[16]  Posteriormente, el U.S. Chamber of Commerce (USCC) compareció, mediante la *Moción Informativa en Torno a Notificación*, para certificar que había remitido una copia de su escrito a todas las partes del pleito.

[17]  Resaltó que la doctrina de Garner no goza de aceptación uniforme en las distintas jurisdicciones de los Estados Unidos y que su aplicación es una limitada o estricta y supeditada al establecimiento de causa suficiente (*good cause*). En todo caso, argumentó que esta doctrina es inaplicable cuando no existe un *mutuality of interest* entre las partes al momento en que se efectúa la comunicación en disputa. Véase *In re* Fuqua Indus., Inc., C.A. Núm. 11974 (Del. Ch. 2002).

[18]  Indicó que los accionistas de los fondos mutuos no son accionistas de UBS y los representantes legales de la compañía de administración no son, necesariamente, abogados de los fondos mutuos.

mismo.[19]   Afirmó que ordenar un descubrimiento de prueba indiscriminado atenta contra la existencia de otros fondos mutuos que no forman parte del presente pleito y, a su vez, podría desestabilizar y desarticular este tipo de instrumento de inversión.

El 23 de junio de 2017, la parte recurrida presentó el *Plaintiffs' Memorandum of Law in Opposition to the Motion to File an Amicus Brief by the U.S. Chamber of Commerce* en el que propuso que se descartara el análisis de la USCC porque se basó en casos o circunstancias en los que aplicaba el Investment Company Act de 1940, mientras que a los fondos mutuos que forman parte del presente pleito no les aplica dicha legislación.[20]   Además, argumentó que debe verse con sospecha el que el CEO de la compañía matriz de UBS, el Sr. Sergio P. Ermotti, es también el *chairman* y presidente del Swiss-American Chamber of Commerce, entidad relacionada al USCC.   Indicó además que la diferencia entre una corporación tradicional y un fondo mutuo es insignificante y que procede la aplicación de la doctrina de Garner en el presente caso por la manera complicada en que las entidades de UBS están estructuradas y son operadas.   En esa línea, citó el caso de Kenny v. Pac. Inv. Mgmt. Co. LLC, *infra*, para sostener que UBS tiene un deber fiduciario con los accionistas de los Fondos y que, por ello, procede la

---

[19]   La USCC añadió que las decisiones en Garner v. Wolfinbarger, *supra*, y Wal-Mart Stores, Inc. v. Indiana Elec. Workers Pension Trust Fund IBEW, 95 A.3d 1264 (Del. 2014), no involucraban fondos mutuos ni sus compañías de administración, sino a corporaciones clásicas.

[20]   Este escrito fue redactado en inglés y fue sometido conjuntamente con una copia traducida al español.

divulgación de las comunicaciones entre abogado-cliente en disputa. Concluyó que esto redundaría en una mayor transparencia y responsabilidad por parte de los administradores de fondos mutuos y promovería la confianza de los inversionistas en este mercado puertorriqueño. Por lo cual, solicitó que se denegara la solicitud de *amicus curiae* de la USCC.[21]

El 27 de junio de 2017, la USCC presentó una *Urgente Moción Aclaratoria y Reiteración de Solicitud al Amparo de la Regla 43 del Tribunal Supremo para Comparecer en Calidad de Amicus Curi[a]e* en la que rechazó toda imputación de irregularidad o motivo avieso para su intervención en este ligitio. Aclaró que, en ningún momento, argumentó que el Investment Company Act de 1940 aplicaba a los fondos mutuos organizados en Puerto Rico y que su petición no descansaba en dicha proposición. Además, indicó que, en nuestra jurisdicción, los privilegios son creados por el Tribunal Supremo, pero que se tienen que referir a la Asamblea Legislativa para su posterior consideración, modificación o adopción. Por lo cual, expuso que, para mantener una adecuada separación de poderes, este Foro debe abstenerse de adoptar jurisprudencialmente una excepción al privilegio abogado-cliente.

Con el beneficio de la comparecencia de las partes y de la USCC como *amicus curiae*, expedimos el auto de *certiorari*

---

[21] La parte recurrida sometió una *Moción Explicativa* y el *Memorando de Derecho de los Demandantes en Oposición…* y nos aclaró que este último es una traducción al español del discutido *Plaintiffs' Memorandum of Law in Opposition…* y que, cualquier discrepancia entre estos, se debe resolver utilizando el escrito en inglés.

solicitado y atendemos el recurso de epígrafe sin trámite ulterior conforme a la Regla 50 del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B (2012).   Veamos.

## II

### A. Descubrimiento de Prueba

La Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V (Supl. 2015), establece los parámetros del descubrimiento de prueba en los casos civiles.   En particular, el inciso 23.1(a) de dicha regla le permite a las partes solicitar el descubrimiento "sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente[…]".   Así pues, el alcance del descubrimiento es amplio y liberal.   Berríos Falcón v. Torres Merced, 175 DPR 962 (2009).

En varias ocasiones hemos reiterado que en nuestro sistema de justicia impera "[…]un esquema de descubrimiento de prueba extrajudicial que fomenta una mayor flexibilidad y cooperación entre las partes."   Vincenti v. Saldaña, 157 DPR 37, 54 (2002); Alfonso Brú v. Trane Export, Inc., 155 DPR 158, 167 (2001), citando a J.A. Cuevas Segarra, Tratado de Derecho Procesal Civil, San Juan, Pubs. JTS, 2000, T. I, pág. 468.   Por su parte, la Regla 34.1 de Procedimiento Civil, supra, dispone que, para poder acudir al tribunal para que se ordene descubrir prueba, la parte promovente deberá incluir una certificación que indique, en forma particularizada, que realizó esfuerzos razonables, con prontitud y de buena fe para tratar de llegar a un acuerdo con la representación legal de la parte adversa para resolver

los asuntos probatorios en controversia y que éstos resultaron infructuosos.

## B. Privilegio Abogado-Cliente

El propósito de los privilegios evidenciarios es "adelantar valores e intereses sociales que por consideraciones de política pública se estiman superiores a la búsqueda de la verdad". Pueblo v. Fernández Rodríguez, 183 DPR 770, 784 (2011), citando a E.L. Chiesa Aponte, *Tratado de Derecho Probatorio*, San Juan, Pubs. JTS, 2005, T. I, pág. 169. Uno de estos privilegios es el de abogado-cliente establecido en la Regla 503 de Evidencia, 32 LPRA Ap. VI (2010). En particular, el inciso (b) de esta regla dispone que el cliente tiene el privilegio de rehusar revelar y de impedir que otra persona revele una comunicación confidencial entre ésta y su abogado realizada en el curso de procurar asistencia legal. Conforme al inciso (a)(4) de la referida regla, esta comunicación protegida es aquella habida "en relación con alguna gestión profesional, basada en la confianza de que no será divulgada a terceras personas, salvo a aquéllas que sea necesario para llevar a efecto los propósitos de la comunicación". Íd. Este privilegio tiene como fin garantizar la confidencialidad de las consultas a un abogado de manera que se promueva una ayuda legal efectiva. Pagán *et al.* v. First Hospital, 189 DPR 509 (2013).

El peso de probar un privilegio lo tiene la parte que alega o reclama su existencia. Pagán *et al.* v. First

Hospital, *supra*.**22** Así pues, le corresponde establecer *prima facie* que concurren los elementos necesarios para su aplicación. Pagán *et al*. v. First Hospital, *supra*. Para ello, se exige que se demuestre: que hay expectativa de confidencialidad; que ésta es un elemento esencial para mantener la relación entre las partes; que la comunidad promueve o reconoce este tipo de relación, y que el perjuicio ocasionado por la divulgación de la comunicación supera el beneficio de divulgarla. Pueblo v. Fernández Rodríguez, *supra*. Finalmente, la Regla 518 de Evidencia, 32 LPRA Ap. VI (2010), establece que la determinación sobre la existencia de los privilegios se hará con una interpretación restrictiva, excepto aquellos de rango constitucional.

### C. Privilegio del Producto del Trabajo del Abogado

La Regla 505 de Evidencia, 32 LPRA Ap. VI (2010), establece el privilegio para el producto del trabajo de un abogado, consultor, fiador, asegurador, o agente, preparado u obtenido "en anticipación de, o como parte de una investigación o procedimiento civil, administrativo o penal".

El producto del trabajo o la labor del abogado (*work product*):

> […] consiste de esa información que [el abogado] ha reunido y las impresiones mentales, teorías legales y estrategias que él persigue o ha adoptado, derivadas de entrevistas, declaraciones, memorándum, correspondencia, resúmenes, investigaciones de hechos o de derecho, creencias personales y otros medios tangibles o intangibles. Ades v. Zalman, 115 DPR 514, 525 n.3 (1984),

---

**22** Véase, además, Ponce Advance Med. Grp. Network, Inc. v. Santiago González, 2017 TSPR 54, 197 DPR ___ (2017).

citando a *State ex rel. Dudek v. Circuit Court for Milwaukee County*, 150 N.W.2d 387 (1967).[23]

### D. Doctrina de Garner

Debido a que en nuestra jurisdicción no existe un precedente aplicable a la controversia de marras, los foros recurridos resolvieron la misma basados en la excepción de fiducia establecida en el caso de <u>Garner v. Wolfinbarger</u>, 430 F.2d 1093 (5to Cir. 1970), mejor conocida como la doctrina de Garner. En dicho caso, la Corte de Apelaciones Federal para el Quinto Circuito tuvo ante sí una controversia de descubrimiento de prueba sobre el privilegio abogado-cliente en el contexto de una acción derivativa.

En particular, debía determinarse si una corporación tiene un derecho absoluto al privilegio abogado-cliente o si, en cambio, éste puede ceder ante un reclamo de los accionistas. El referido foro optó por una alternativa que armoniza estas dos opciones. Concluyó que, aunque el privilegio abogado-cliente puede ser invocado por las corporaciones frente a sus accionistas, estos últimos pueden mostrar causa por la cual deben obtener información privilegiada en una acción derivativa en la cual se reclaman actuaciones contrarias a los intereses de los accionistas. <u>Íd.</u>

Para determinar si existe causa justificada (*good cause*) se deben considerar varios indicadores (*indicia*). <u>Íd.</u> Entre estos factores, el tribunal puede evaluar:

---

[23]   Véase, además, <u>S.L.G. Font Bardón v. Mini-Warehouse</u>, 179 DPR 322 (2010).

> *[…] the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.* Garner v. Wolfinbarger, *supra*, pág. 1104.

En el proceso, el tribunal puede utilizar la inspección en cámara y las órdenes protectoras para preservar la confidencialidad de los documentos. Íd. Se debe tener presente que pueden darse situaciones en las que la corporación, su gerencia o ambas tengan intereses adversos a los de alguno o todos los accionistas. Íd. No obstante, es medular tener en consideración que los accionistas de una corporación son los últimos beneficiarios del privilegio abogado-cliente y que la corporación le responde a éstos.[24] Íd. Entonces, las decisiones o el juicio profesional de la gerencia no deben quedar cubiertas por un velo de secretividad absoluta. Íd.

Eventualmente, esta doctrina fue acogida por el Tribunal Supremo de Delaware en Wal-Mart Stores, Inc. v. Indiana Elec. Workers Pension Trust Fund IBEW, 95 A.3d 1264 (Del. 2014). Dicho pleito también se presentó como una acción derivativa

---

[24] El caso de Garner v. Wolfinbarger, *supra*, al citar dos casos de Inglaterra, afirmó que la relación entre una corporación y sus accionistas podría ser análoga a la relación entre un fiduciario y los beneficiarios del fideicomiso.

en la cual la corporación reclamó el privilegio abogado-cliente. _Íd._ El foro de última instancia de Delaware explicó que la doctrina de Garner le permite a los accionistas, previa demostración de causa suficiente (_good cause_), invadir el privilegio abogado-cliente de su corporación para demostrar violaciones al deber de fiducia por parte de aquellos que controlan la corporación. _Íd._ Ahora bien, enunció que, debido al interés público que promueve el privilegio abogado-cliente en la administración de la justicia y en el balance de intereses, la excepción fiduciaria de Garner debe aplicarse de forma restrictiva, de forma tal que sea difícil de cumplir. _Íd._

En cuanto al indicador de necesidad de la información y la indisponibilidad en otras fuentes establecido en la doctrina de Garner, el Tribunal Supremo de Delaware explicó que el foro primario encontró que los documentos solicitados iban a la médula de la controversia y que había prueba en el récord que apuntaba a que la corporación demandada incurrió en ciertas conductas cuestionables que, para que ocurrieran, era necesaria la asistencia de abogados. _Íd._

Aunque el pleito de epígrafe versa sobre un asunto de derecho probatorio, está enmarcado en el ámbito del derecho corporativo puertorriqueño. Éste, a su vez, está basado en el derecho corporativo de Delaware, por lo cual, la jurisprudencia de dicho estado es altamente persuasiva e ilustrativa en nuestra jurisdicción y la acogeremos en la medida que ésta se ajuste a nuestra realidad. _Rivera_

Sanfeliz *et al*. v. Jta. Dir. FirstBank, 193 DPR 38 (2015);

Lloréns *et al*. v. Arribas *et al*., 184 DPR 32 (2011).

**Tras evaluar la doctrina de Garner**, estamos convencidos de que ésta resultaría de gran utilidad para adelantar los intereses de una corporación en el contexto de una acción derivativa. No se trata de crear un privilegio por vía de la jurisprudencia sino de adoptar unas guías para identificar quiénes están cobijados por el privilegio abogado-cliente. Cabe reiterar que la corporación existe para adelantar los intereses legítimos de sus accionistas. Así pues, para atender adecuadamente controversias relacionadas con el privilegio abogado-cliente que surjan en este tipo de litigio, **adoptamos en nuestra jurisdicción los indicadores establecidos jurisprudencialmente por dicha doctrina. Estos son: 1) la cantidad de accionistas en el pleito y el porciento de acciones que representa; 2) la buena fe de los accionistas; 3) la naturaleza de la reclamación y la probabilidad de prevalecer; 4) la necesidad aparente de obtener la información y la disponibilidad en otras fuentes; 5) si la reclamación contiene imputaciones de actos ilegales, criminales, o de dudosa legalidad por parte de la corporación; 6) si la comunicación en disputa se relaciona a reclamaciones pasadas o futuras; 7) si la comunicación se relaciona a consejos sobre el propio litigio; 8) si se puede identificar la comunicación o si, en cambio, se trata de una expedición de pesca, y 9) el riesgo de divulgar secretos de negocios u otra información confidencial que la empresa interese proteger por razones ajenas al pleito.**

Esta doctrina deberá interpretarse restrictivamente en contra de quien reclama la excepción fiduciaria. Además, debemos aclarar que éstos no son requisitos sino indicadores, por lo que no será necesario, pero si prudente, considerarlos todos en conjunto. Coincidimos con la jurisprudencia que mencionaremos más adelante en cuanto a que el cuarto criterio, es decir, la necesidad aparente de obtener la información y la no disponibilidad en otras fuentes, es medular para este análisis.

Por otro lado, como muy bien señala el *amicus curiae*, la controversia que tenemos ante nuestra consideración no trata de una corporación tradicional, sino de un fondo mutuo. Los fondos mutuos son corporaciones o fideicomisos organizados con el propósito de que personas naturales y jurídicas inviertan su dinero, convirtiéndose en accionistas de éstas. J. Morley, *The Separation of Funds and Managers: A Theory of Investment Fund Structure and Regulation*, 123 Yale L.J. 1228, 1238 (2014). Por su parte, los fondos utilizan el dinero invertido para adquirir diferentes instrumentos financieros que se encuentran en la oferta pública. E.D. Johnson, *The Fiduciary Duty in Mutual Fund Excessive Fee Cases: Ripe for Reexamination*, 59 Duke L.J. 145, 150-151 (2009). Finalmente, el rendimiento de los instrumentos financieros es repartido entre todos los accionistas del fondo mutuo.[25]

Sin embargo, los accionistas de los fondos mutuos delegan, mediante un arreglo contractual, a otra corporación

---

[25] *Moción al Amparo de la Regla 43 del Reglamento del Tribunal Supremo Solicitando Autorización para Comparecer como Amicus Curiae* presentada por el USCC, pág. 4.

con personalidad jurídica propia, conocida como compañía administradora o promotora, la administración de los fondos. Morely, *supra*, págs. 1238-1239. En otras palabras, los fondos no cuentan con empleados ni con ningún tipo de bien operacional, pues la compañía administradora es la que se encarga de proveer todos estos servicios. Íd. Esto es diferente a lo que ocurre en las corporaciones tradicionales en las cuales los accionistas delegan la administración de la corporación a la junta de directores, la cual es un organismo interno de la corporación. C.E. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, Colombia, [s. Ed], 2016, pág. 175. De esta forma, como muy bien surge de la moción del *amicus curiae*, el arreglo de los fondos mutuos incluye una entidad jurídica adicional. Así pues, los accionistas de los fondos mutuos no necesariamente son accionistas de la compañía administradora.

Asimismo, el *amicus curiae* trajo a nuestra atención dos casos recientes sobre fondos mutuos en los que se consideró la aplicación de la excepción fiduciaria. En Kenny v. Pac. Inv. Mgmt. Co. LLC, No. C14-1987-RSM (W.D. Wash. 2016), un accionista de un fondo mutuo, organizado como fideicomiso, solicitó a la Corte de Distrito Federal en Western Washington que ordenara a ciertos *Independent Trustees* (fiduciarios) la entrega de una serie de documentos. Por su parte, estos *Trustees*, que no eran parte del pleito, y las corporaciones demandadas, se opusieron a la producción de cierta información y alegaron el privilegio abogado-cliente. Así pues, la controversia a resolver era si procedía aplicar la

excepción fiduciaria y, por lo tanto, no aplicaba a los documentos en controversia el privilegio de abogado-cliente. La Corte de Distrito determinó que los *Independent Trustees* tenían un deber de fiducia para con los accionistas del fondo mutuo y que las comunicaciones en cuestión incluían consejo legal para el manejo del fondo.[26] Por lo cual, concluyó que procedía el descubrimiento de la información privilegiada. Así pues, estableció una excepción relativamente amplia basada únicamente en la relación de fiducia entre las partes, el impacto del consejo legal sobre el manejo del fondo mutuo y que la comunicación no sea en anticipación de un litigio.[27]

Por otro lado, en <u>Chill v. Calamos Advisors LLC</u>, No. 17 C 1658 (N.D. Ill. 2017), varios accionistas de un fondo mutuo, organizados como un fideicomiso, demandaron mediante acción derivativa a la entidad encargada de administrarlo, Calamos Advisors LLC, y a otras entidades afiliadas por alegada violación al deber de fiducia. Sin embargo, ni el fondo ni los *Independent Trustees* fueron parte en la demanda. Durante el proceso, los demandantes solicitaron al fondo y a los fiduciarios del mismo la producción de una serie de documentos. Por su parte, el fondo y los *Independent Trustees* alegaron el privilegio de abogado-cliente sobre algunos de los documentos solicitados. Tras acoger y

---

[26] Nótese que la Corte de Distrito aclaró que las comunicaciones en controversia no eran consejos legales para los *Independent Trustees* en su carácter personal y tampoco se trataba de comunicaciones emitidas en anticipación a un litigio.

[27] Ante estas circunstancias, la Corte de Distrito consideró que los *Independent Trustees* que reclamaron el privilegio debían demostrar satisfactoriamente las razones por la cual éstos, actuando como fiduciarios de los accionistas o beneficiarios, podrían oponerse al descubrimiento de comunicaciones con abogados, pagadas por el *trust* para el beneficio del mismo.

analizar los indicadores de la doctrina de Garner, la Corte de Distrito Federal en Illinois determinó que la parte que solicita la información privilegiada debe demostrar, particularmente, que la información no se puede obtener de otro modo. Para ello, dicha parte debe indicar lo siguiente: la información que esperan encontrar en los documentos en disputa; la importancia de éstos para el caso, y la razón por la cual no se pueden obtener de otras fuentes no privilegiadas.[28] Finalmente, la Corte determinó que no se demostró, de manera específica, la necesidad de cada documento. Indicó que no bastaba una alegación general que la información no estaba disponible en otras fuentes, por lo que concluyó que no se acreditó este indicador medular de la doctrina de Garner.

Cabe destacar que en los casos reseñados aplica la excepción antes señalada porque los accionistas solicitaron la producción de documentos a los fondos de los que son accionistas y no a las corporaciones administradoras de los fondos.

Conforme a lo anterior, siempre que se considere la doctrina de Garner, debe evaluarse si se trata de una relación accionista-corporación. Esto es así, debido a que la doctrina de Garner aplica en el contexto de una acción derivativa cuando los accionistas le solicitan a su propia corporación información cobijada por el privilegio abogado-

---

[28] La Corte de Distrito Federal reconoció que la parte que solicita el descubrimiento no puede saber con exactitud el contenido de los documentos privilegiados. No obstante, mediante métodos alternos de descubrimiento de prueba, puede anticipar la información que espera obtener de los mismos.

cliente. Esto implica que los accionistas no pueden valerse de la doctrina de Garner para requerirle información privilegiada a terceros ajenos a su propia corporación. En ese sentido, conforme a los criterios de esta doctrina, los accionistas de determinado fondo mutuo únicamente pueden reclamar la producción de comunicaciones a esa entidad en particular. De lo contrario, se estaría extendiendo el alcance reconocido de la doctrina a otras entidades que son partes en el pleito, tales como una compañía que administra fondos mutuos,[29] o a terceros ajenos al litigio.[30]

Es menester reiterar que, **ante una controversia de esta índole, las partes deben cumplir con lo establecido en nuestro ordenamiento procesal. En primer lugar, tienen que dar fiel cumplimiento a la Regla 34.1 de Procedimiento Civil,** *supra*.[31] Una vez las partes realizan esfuerzos de buena fe para resolver las controversias probatorias sobre el descubrimiento de información privilegiada[32] y así lo

---

[29] Como bien indica el *amicus curiae*, "la compañía de administración no es un organismo interno ni forma parte de la estructura corporativa del fondo mutuo, por lo que los abogados de la compañía de administración, no fungen necesariamente como abogados del fondo ni de sus inversores". *Moción al Amparo de la Regla 43 del Reglamento del Tribunal Supremo Solicitando Autorización para Comparecer como Amicus Curiae* presentada por el USCC, pág. 11.

[30] No obstante, debemos aclarar que, con esto, sólo nos referimos a la excepción al privilegio abogado-cliente establecida en el contexto de Garner v. Wolfinbarger, *supra*, y su progenie. Esto se debe, en parte, a que varios de los indicadores establecidos bajo esta jurisprudencia se basaron en la relación accionista-corporación. Ahora bien, no descartamos que en una relación fiduciaria fuera de ese contexto pueda aplicar una excepción análoga al privilegio abogado-cliente. Véase, por ejemplo, Kenny v. Pac. Inv. Mgmt. Co. LLC, No. C14-1987-RSM (W.D. Wash. 2016).

[31] Nótese, además, que la Regla 23.3(a) de Procedimiento Civil, 32 LPRA Ap. V (2010), exige que "[c]uando una parte retiene información requerida, reclamando que es materia privilegiada[…], deberá hacer su reclamo de manera expresa y fundamentada especificando la naturaleza de los documentos, de las comunicaciones o de los objetos no producidos o revelados, de forma que, sin revelar información privilegiada, las demás partes puedan evaluar la aplicabilidad del privilegio o protección, y expresarse sobre éstos".

[32] Esto incluye evaluar quiénes son los titulares del privilegio reclamado.

certifiquen, pueden acudir al Tribunal de Primera Instancia para que éste emita la decisión correspondiente.

De esta forma, las partes deberán poner al foro primario en posición de determinar la existencia del privilegio abogado-cliente y a quién le aplica.[33] Para ello, **la parte que reclama el privilegio tiene el peso de demostrar la existencia *prima facie* del mismo. En el caso particular de una acción derivativa, sólo podrá aplicarse la doctrina de Garner cuando una corporación reclama el privilegio ante sus propios accionistas. En ese caso, los accionistas tendrán el peso de probar los indicadores antes esbozados. Entre éstos, destacamos que se debe precisar si existe una necesidad concreta de obtener la información privilegiada y si hay otro medio no privilegiado para adquirirla.**

### III

En el presente caso, los foros recurridos determinaron que la información solicitada por la parte recurrida era necesaria para probar sus alegaciones y que estaba en el poder exclusivo de la parte peticionaria. Ahora bien, de los autos no se desprende que la parte recurrida haya puesto en posición a los foros recurridos de analizar el criterio de necesidad y de indisponibilidad, según requiere la doctrina. Esta parte se limitó a argumentar que, por razón de la

---

[33] En ese sentido, es menester plantear si los titulares están en disputa o si los intereses de estos divergen. También, se tendrá que evaluar: si se había entablado algún procedimiento adversativo entre las partes al momento de recibir la consejería; si hay alguna indicación de que la comunicación era para algún propósito que no fuera para el beneficio de los fondos, y quién pagó por la asesoría legal en disputa. United States v. Jicarilla Apache Nation, 564 US 162 (2011), comentando el caso de Riggs Nat. Bank of Washington, D.C. v. Zimmer, 355 A.2d 709 (Del. Ch. 1976). Véase, además, Metro. Bank & Trust Co. v. Dovenmuehle Mortg., Inc., C.A. Núm. 18023-NC (Del. Ch. 2001), e *In re* Fuqua Indus., Inc., *supra*.

relación fiduciaria existente, operaba la doctrina de Garner, sin adentrarse suficientemente a discutir los indicadores antes señalados. La existencia de una relación fiduciaria *per se* no activa automáticamente la doctrina de Garner. Como resultado de lo anterior, los foros recurridos se vieron precisados a realizar un análisis general de la bitácora en cuestión y de algunos de los miles de documentos sometidos ante ellos. Este análisis poco detallado no es suficiente para satisfacer el riguroso estándar de la doctrina de Garner en este caso.

Además, la doctrina de Garner requiere que se acredite que la información en disputa no está disponible en otras fuentes. Usualmente, en una acción derivativa, la mayor parte de la información relacionada a las actuaciones de la corporación va a estar en poder exclusivo de la misma. Así pues, el término "otras fuentes" no se refiere necesariamente a fuentes ajenas a la corporación, sino que no esté disponible en otros documentos o testimonios no privilegiados. Los foros recurridos estimaron que era suficiente determinar que toda la prueba pertinente está en manos de la parte peticionaria, sin considerar la disponibilidad en otros documentos no privilegiados. Este tipo de análisis genérico no es suficiente al considerar dicho indicador. Por lo cual, se cometieron el primer y tercer error señalados.

Ahora bien, no estamos en posición de determinar con precisión la existencia *prima facie* de los privilegios reclamados ni la titularidad de los mismos ni de determinar

si la doctrina le aplica a todos los documentos en disputa. Consecuentemente, no es necesario adentrarnos a los restantes señalamientos de error.

No obstante, en cuanto al privilegio del producto del trabajo del abogado, debemos enfatizar que la parte perticionaria debe, en primer lugar, demostrar que la información en cuestión fue provista o preparada **en anticipación o como parte de un litigio**. Se le debe conceder una oportunidad de así hacerlo, luego de darse fiel cumplimiento a la Regla 34.1 de Procedimiento Civil, *supra*.

**IV**

A base de lo anterior, se revoca la Sentencia del Tribunal de Apelaciones de 15 de marzo de 2017. En consecuencia, dejamos sin efecto la paralización ordenada y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad al análisis anteriormente establecido.

Se dictará Sentencia de conformidad.

ROBERTO FELIBERTI CINTRÓN
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Raúl E. Casasnovas Balado *et al.*<br><br>        Recurridos<br><br>               v.<br><br>UBS  Financial  Services, Inc. *et al.*<br><br>        Peticionarios<br><br>Puerto  Rico  Fixed  Income Fund, Inc. *et al.*<br><br>        Peticionarios | **CC-2017-0427** | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico, a 23 de agosto de 2017.

        Por  los  fundamentos  expuestos  en  la  Opinión  que antecede,  la  cual  se  hace  formar  parte  íntegra  de  la presente Sentencia, revocamos la Sentencia del Tribunal de Apelaciones de 15 de marzo de 2017, dejamos sin efecto la paralización ordenada y devolvemos el caso al Tribunal de Primera  Instancia  para  la  continuación  de  los procedimientos  de  conformidad  al  análisis  establecido  en dicha Opinión.

        Lo  acordó  el  Tribunal  y  certifica  el  Secretario  del Tribunal  Supremo.    La  Juez  Asociada  señora  Rodríguez Rodríguez,  la  Jueza  Asociada  señora  Pabón  Charneco  y  el Juez Asociado señor Estrella Martínez, no intervienen.


                    Juan Ernesto Dávila Rivera
                 Secretario del Tribunal Supremo