ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **SUN BORICUA PAL MUNDO INC.**<br><br>Apelado<br><br>v.<br><br>**ENGIWORKS INC.**<br><br>Apelante | KLAN202400132<br><br>Consolidado con<br><br>KLAN202400155 | **APELACION** procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Civil Núm.: **CG2021CV01263**<br><br>Sobre: Cobro de Dinero – Ordinario y otros |
| **SUN BORICUA PAL MUNDO INC.**<br><br>Apelante<br><br>v.<br><br>**ENGIWORKS INC.**<br><br>Apelado | | |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de mayo de 2024.

El 15 de febrero de 2024, compareció ante nos Engiworks, Inc., (en adelante, Engiworks), a través de un recurso de *Apelación*, y nos solicita que revoquemos una *Sentencia Sumaria* emitida el 26 de septiembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), notificada y archivada en autos el 28 de septiembre de 2023.[1] Por medio de dicho dictamen, el foro primario declaró con lugar la *Demanda* del caso de marras y,[2] consecuentemente, condenó a Engiworks a pagarle a Sun Boricua Pal Mundo, Inc. (en adelante, Sun Boricua) la suma de $2,500.00, y $1,500.00 en concepto de honorarios de abogado. El foro primario

---

[1] Apéndice de la *Apelación*, Anejo 9, págs. 16-23.
[2] *Íd.*, Anejo 84, págs. 243-247.

advirtió, además, que la aludida *Sentencia Sumaria* devengará intereses legales al 9.5% anual, según establecido por la Oficina del Comisionado de Instituciones Financieras, desde su notificación hasta su total y completo pago.

Por su parte, el 20 de febrero de 2024, compareció Sun Boricua ante nos por medio de un recurso de *Apelación* donde nos solicita la revisión y revocación parcial de la misma *Sentencia Sumaria* emitida por el TPI. Específicamente, suplica que confirmemos la devolución de la cantidad de $2,500.00 pagada en concepto de depósito a favor de Engiworks, al igual que los hechos incontrovertidos incluidos en la *Sentencia Sumaria*. Sin embargo, Sun Boricua solicita que devolvamos el caso al foro *a quo* para la continuación de los procedimientos en cuanto a la controversia sobre los posibles daños económicos sufridos por esta ante el incumplimiento de contrato por parte de Engiworks.

Por los fundamentos que expondremos a continuación, resolvemos confirmar en parte y revocar parcialmente la *Sentencia Sumaria* recurrida.

## I.

La presente controversia tiene su génesis el 26 de mayo de 2021 cuando Sun Boricua presentó una *Demanda* en cobro de dinero e incumplimiento contractual.[3] Arguyó Sun Boricua que su empresa se dedicaba a la manufactura de frituras y venta al por mayor de las mismas. Sun Boricua también sostuvo que para preparar las frituras y satisfacer su demanda, utilizaba equipos que permitían un volumen alto de producción. Alegó además que, el 20 de octubre de 2020, contrató a Engiworks, para la manufacturación e ingeniería de un *cutter roller made of delrin*, la cual, según sostuvo, era pieza esencial para sus equipos. Arguyó Sun Boricua que el

---

[3] *Íd.*

costo total del servicio contratado fue de $4,235.83, y le pagó a Engiworks el 50% del costo total del servicio contratado. Según se desprende de las alegaciones de Sun Boricua, Engiworks acordó entregar la pieza dentro de un plazo máximo de cinco (5) semanas, pero nunca entregó la pieza según acordado. Sun Boricua arguyó que Engiworks incumplió con sus obligaciones contractuales hacia ella y, que, por tal incumplimiento, le ocasionó pérdidas económicas de $104,860.16. Por último, Sun Boricua solicitó $2,117.92 en concepto del pago adelantado a Engiworks, y una suma de $10,000.00 por daños, así como costas, gastos y la suma total por los honorarios de abogado.

Luego de varios trámites procesales, el 19 de agosto de 2021, Engiworks presentó una *Contestación a la Demanda*[4] donde admitió que el 20 de octubre de 2020, Sun Boricua acudió ante esta para que le cotizara trabajos de ingeniería y manufactura para intentar reproducir un rodillo de corte que no funcionaba, pero que no había podido reemplazarlo porque su manufacturero original ya no existía. Sostuvo Engiworks que Sun Boricua le entregó una muestra de rodillo de corte que estaba fuera de servicio y bajo el proyecto identificado como SNB-01 *Delrin Cutter Roller* (en adelante, proyecto SNB-01), le cotizó a Sun Boricua sus servicios divididos en dos (2) etapas independientes; a saber, (a) servicios de ingeniería invertida o *reversed engineering* para el diseño de un modelo 3D; y (b) servicios de reproducción y manufactura de la aludida pieza a base del diseño 3D preparado por Engiworks. Engiworks también alegó que la cotización del proyecto SNB-01 fue por la suma de $4,235.83 y que Sun Boricua le entregó $2,117.92. Admitió, además, que le iba a entregar a Sun Boricua la pieza solicitada en un máximo de cinco (5) semanas. Según se desprende de las alegaciones de

---

[4] *Íd.*, Anejo 81, págs. 231-235.

Engiworks, esta realizó todo el trabajo de análisis, evaluación del proyecto y diseño de ingeniería invertida de la primera etapa cotizada con el objetivo de poder reproducir la pieza fuera de servicio; y que le entregó a Sun Boricua un diseño 3D de la pieza que se produjo por su trabajo de ingeniería. Alegó Engiworks que le explicó a Sun Boricua que se le iba a hacer imposible manufacturar la aludida pieza porque la misma requería un eje de rotación de 1/5, y esa tecnología no estaba disponible. Sostuvo, también, que ofreció devolverle a Sun Boricua su depósito. Engiworks alegó que actuó de buena fe durante la cotización de sus trabajos y en la ejecución de la evaluación y diseño de *reversed engineering*. Arguyó, por último, que, por razones fuera de su control y no atribuibles a ella, era imposible que pudiera manufacturar la pieza por falta de disponibilidad de la tecnología del eje de rotación necesario y específico.

Posteriormente, el 16 de septiembre de 2021, Engiworks presentó una *Solicitud de Permiso para Presentar Contestación Enmendada a la Demanda,*[5] por la que le acompañó una *Contestación Enmendada a la Demanda.*[6] Por medio de dicha contestación enmendada, Engiworks aclaró que la cuantía del depósito entregado por Sun Boricua fue de $2,500.00, y que había acordado con Sun Boricua entregar la pieza en cuestión dentro de un plazo máximo de cinco (5) semanas laborables a partir del depósito.

El 24 de septiembre de 2021, el foro primario emitió una *Orden,* notificada y archivada en autos el 28 de septiembre de 2021,[7] por medio de la cual aceptó la *Contestación Enmendada a la Demanda.*

---

[5] *Íd.*, Anejo 79, págs. 220-226.
[6] *Íd.*, págs. 222-226.
[7] *Íd.*, Anejo 78, pág. 219

El 18 de octubre de 2021, Engiworks presentó un *Memorándum al Expediente Judicial*[8] informándole al foro *a quo* de haberle cursado a Sun Boricua, por medio de su representante legal, un *Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos* y un *Requerimiento de Admisiones*.

Luego de varios trámites procesales, el 10 de noviembre de 2021, Engiworks presentó una *Moción para que se den por Admitidos los Requerimientos de Admisiones*[9] donde solicitó del TPI que dictara una orden para dar por admitidas las cuestiones del *Requerimiento de Admisiones* notificadas a Sun Boricua, luego de que transcurriera el término dispuesto en la Regla 33 de Procedimiento Civil, 32 LPRA Ap. V, R. 33, para contestar el aludido requerimiento, sin que Sun Boricua hubiese cursado su contestación.

Ese mismo día, Sun Boricua presentó una *Oposición a: Moción para que se den por Admitidos los Requerimientos de Admisiones*.[10] Por medio de esta, alegó que la solicitud de Engiworks para dar por admitido el *Requerimiento de Admisiones* era prematura dado a que, contrario a la Regla 34.1 de Procedimiento Civil, *supra*, R. 34.1, Engiworks no se comunicó primero con el representante legal de Sun Boricua, previo a acudir al tribunal, para así coordinar las fechas y establecer arreglos pertinentes al descubrimiento de prueba pendiente. También sostuvo que, por su parte, Engiworks se había beneficiado de prórrogas para contestar la *Demanda* y cumplir con el descubrimiento de prueba, sin oposición de Sun Boricua. Concluyó que como los abogados dependen de que sus clientes realicen las gestiones necesarias para completar los requerimientos, fue razonable que Sun Boricua solicitara el término adicional para contestar el *Requerimiento de Admisiones*.

---

[8] *Íd.*, Anejo 77, pág. 218.
[9] *Íd.*, Anejo 70, págs. 205-206.
[10] *Íd.*, Anejo 68, págs. 201-202.

El 10 de noviembre de 2021, el foro primario emitió una *Orden*, notificada y archivada en autos el 17 de noviembre de 2021,[11] por la cual determinó que la solicitud de Engiworks no cumplió con la Regla 34.1 de Procedimiento Civil, *supra.*

Posteriormente, el 21 de enero de 2022, Sun Boricua presentó una *Moción Informativa* por la que le informó al TPI de haberle notificado a Engiworks,[12] por medio de su representante legal, la *Contestación a Requerimiento de Admisiones e Interrogatorio.*

Luego de varios trámites procesales, el 13 de marzo de 2023, Sun Boricua presentó una *Moción para que se dicte Sentencia Sumaria Parcial.*[13] Arguyó que no existía controversia respecto a que ella misma le pagó a Engiworks una suma de $2,500.00 como depósito inicial para el diseño y construcción de una pieza llamada *cutter roller made of delrin* por un costo de $4,235.83; que Engiworks acordó que le iba a entregar dicha pieza dentro de un máximo de cinco (5) semanas; que Engiworks fue incapaz de construirla; que le solicitó a Engiworks la devolución del aludido depósito; y que no se lo devolvió. Por lo tanto, sostuvo Sun Boricua que procedía la inmediata devolución de dicho dinero.

El 14 de marzo de 2023, Engiworks presentó una *Solicitud de Posposición de Consideración de Solicitud de Sentencia Sumaria Parcial conforme a la Regla 36.6 de Procedimiento Civil.*[14] Solicitó del TPI que pospusiese la consideración de la *Moción para que se dicte Sentencia Sumaria Parcial* en lo que terminaba la toma de deposición del representante de Sun Boricua y otros testigos, si alguno. Alegó que no iba a poder presentar, junto a su oposición a la referida solicitud de sentencia sumaria parcial, declaraciones bajo

---

[11] *Íd.*, Anejo 67, pág. 200.
[12] *Íd.*, Anejo 65, págs. 196-197.
[13] *Íd.*, Anejo 39, págs. 99-122.
[14] *Íd.*, Anejo 38, págs. 96-98.

juramento de Sun Boricua si no se realizaba dicha posposición, a tenor con la Regla 36.6 de Procedimiento Civil, *supra*, R. 36.6.

El mismo 14 de marzo de 2023, Sun Boricua presentó una *Réplica a: Solicitud de Posposición de Consideración de Solicitud de Sentencia Sumaria Parcial conforme a la Regla 36.6 de Procedimiento Civil.*[15] Sostuvo que no procedía la solicitud de posposición de Engiworks cuando ella misma admitió en su *Contestación Enmendada a la Demanda* que le ofreció a Sun Boricua devolver dicho dinero. Sun Boricua arguyó además que ya las partes habían intercambiado declaraciones bajo juramento por medio de interrogatorios y requerimiento de admisiones. Alegó Sun Boricua que solicitó una sentencia sumaria parcial respecto al depósito en cuestión y no sobre todas las controversias pendientes del caso de marras. Continuó con que la *Moción para que se dicte Sentencia Sumaria Parcial* fue debidamente fundamentada con las alegaciones afirmativas de Engiworks, la contestación a interrogatorio del presidente de Engiworks, la contestación a interrogatorio del representante de Sun Boricua, la cotización del proyecto SNB-01 y la copia del recibo del depósito de $2,500.00.

Por su parte, ese mismo día, Engiworks presentó una *Réplica a Oposición a Solicitud de Posposición de Consideración de Solicitud de Sentencia Sumaria Parcial conforme a la Regla 36.6 de Procedimiento Civil*.[16] Por medio de la misma, Engiworks arguyó que existía controversia sobre si la suma de $2,500.00 constituyó un depósito, pues, según sostuvo, en la *Demanda* y en la contestación al *Requerimiento de Admisiones*, Sun Boricua expresó que le pagó a Engiworks el 50% del costo total del servicio contratado. Alegó también que, a tenor con el Artículo 1454 del *"Código Civil de Puerto Rico" de 2020*, Ley Núm. 55 del 1 de junio de 2020, según

---

[15] *Íd.*, Anejo 37, págs. 92-95.
[16] *Íd.*, Anejo 36, págs. 88-91.

enmendada, 31 LPRA sec. 10511, las partes no acordaron un contrato de depósito. Sostuvo Engiworks que el pago de $2,500.00 le correspondía a esta por todo el análisis de evaluación del proyecto y diseño de ingeniería. También sostuvo que la negociación extrajudicial respecto a la cantidad de $2,500.00 fue infructuosa y que la oferta de transacción era inadmisible, conforme a la Regla 408 de Evidencia, 32 LPRA Ap. VI, R. 408. Por último, alegó Engiworks que procedía culminar con el descubrimiento de prueba para que el tribunal pudiese tener ante sí la totalidad de la prueba y determinar si las aludidas comunicaciones estaban protegidas, y si existió un contrato de depósito entre las partes.

Posteriormente, el 4 de mayo de 2023, Engiworks presentó una *Solicitud de Permiso de Enmienda a las Alegaciones*[17] para incorporar defensas afirmativas a su *Contestación a la Demanda* relacionadas a la petición de quiebra presentada por Sun Boricua ante la United States Bankruptcy Court, District of Puerto Rico, sobre la venta de ingresos a un tercero que no forma parte del pleito de marras, entre otras.

El 16 de junio de 2023, el foro primario emitió una *Orden*, notificada y archivada en autos el 21 de junio de 2023,[18] por la que aprobó la solicitud presentada por Engiworks con el propósito de enmendar su *Contestación a la Demanda*.

El 20 de septiembre de 2023, Sun Boricua presentó una moción *Para Reiterar que se Adjudique la Solicitud de Sentencia Sumar[i]a Parcial*.[19] En lo pertinente, reiteró que procedía dictar sentencia sumaria parcial a su favor. Sostuvo además que, por medio de la *Contestación Enmendada a la Demanda*, Engiworks admitió que recibió de ella la suma de $2,500.00 en calidad de

---

[17] *Íd.*, Anejo 18, págs. 57-63.
[18] *Íd.*, Anejo 17, pág. 56.
[19] *Íd.*, Anejo 15, págs. 42-43.

depósito, y también aceptó que ofreció devolverle dicho deposito. Concluyó Sun Boricua que no se justificó la dilación respecto a la adjudicación de la controversia relacionada al aludido depósito, y que, en cambio, se debía procurar por una resolución rápida, económica y justa.

El 20 de septiembre de 2023, Engiworks presentó una *Notificación de Intención de Presentar Oposición a Mociones Registradas en SUMAC Núm. 90 y 91*,[20] por la que solicitó hasta el 10 de octubre de 2023 para oponerse a la solicitud *Para Reiterar que se Adjudique la Solicitud de Sentencia Sumar[i]a Parcial* y a *la Oposición a: Solicitud de Orden al amparo de la Regla 34.2 de Procedimiento Civil para que se produzca lo Solicitado*[21] presentada por Sun Boricua el 20 de septiembre de 2023.

Ese mismo día, Sun Boricua presentó una *Réplica a: Notificación de Presentar Oposición a Mociones Registradas en SUMAC Núm. 90 y 91*.[22] Por su parte, el 21 de septiembre de 2023, Engiworks presentó una *R[é]plica a Oposición a Notificación de Intención de Presentar Oposición a Mociones Registradas en SUMAC Núm. 90 y 91*.[23]

El 26 de septiembre de 2023, el TPI emitió una *Sentencia Sumaria*,[24] notificada y archivada en autos el 28 de septiembre de 2023, en la que declaró con lugar la *Demanda* del caso de marras y, consecuentemente, condenó a Engiworks a pagarle a Sun Boricua la suma de $2,500.00, y $1,500.00 en concepto de honorarios de abogado. Advirtió, además, que la aludida *Sentencia Sumaria* devengará intereses legales al 9.5% anual, según establecido por la Oficina del Comisionado de Instituciones Financieras, desde su notificación hasta su total y completo pago. Fundamentó dicho

---

[20] *Íd.*, Anejo 12, págs. 31-32.
[21] *Íd.*, Anejo 14, págs. 34-41.
[22] *Íd.*, Anejo 11, págs. 26-30.
[23] *Íd.*, Anejo 10, págs. 24-25.
[24] *Íd.*, Anejo 9, págs. 16-23.

dictamen en que, no existía controversia sobre el pago de $2,500.00 realizado por Sun Boricua, que Engiworks no entregó la pieza, y que Sun Boricua solicitó la devolución de dicho depósito. Además, concluyó el TPI que Engiworks se obligó no solo con el cumplimiento expreso de lo pactado con Sun Boricua, sino también con todas las consecuencias de su incumplimiento incluyendo la devolución de la cantidad de $2,500.00 por no haber podido cumplir con la entrega de la pieza según acordado.

Inconforme con el dictamen del foro primario, el 28 de septiembre de 2023, Sun Boricua presentó una *Reconsideración a la Sentencia dictada el 28 de septiembre de 2023*[25] por la que solicitó del foro primario que aclarase que la *Sentencia Sumaria* era parcial y que el caso debía continuar en torno a los daños económicos solicitados como consecuencia del incumplimiento de contrato por parte de Engiworks. Señaló, además, que dicho dictamen carece de determinaciones de hechos relacionados a los aludidos daños económicos solicitados ni al incumplimiento doloso, y que, por tanto, debió estar sujeto a un juicio donde Engiworks pueda pasar prueba sobre sus alegaciones.

Por su parte, el 4 de octubre de 2023, Engiworks presentó una *Solicitud de Reconsideración* por la cual expresó,[26] en lo pertinente, que la *Sentencia Sumaria* no cumplía con los criterios establecidos en el caso de *Howard Ferrer v. PRTC*, 209 DPR 574 (2022) respecto al trámite de sentencias sumarias, y que ello la privaba de su día en corte. También arguyó Engiworks que el foro *a quo* debió de haberle concedido tiempo para presentar su oposición a la *Moción para que se dicte Sentencia Sumaria Parcial* y completar el descubrimiento de prueba. Por último, arguyó que de la totalidad de la prueba

---

[25] *Íd.*, Anejo 4, págs. 10-11.
[26] *Íd.*, Anejo 3, págs. 3-9.

presentada por Sun Boricua, no se demostró de forma incontrovertible que tuviese derecho a la devolución de $2,500.00.

El 20 de enero de 2024, el TPI emitió dos *Órdenes*,[27] notificadas y archivadas en autos al siguiente día, en las que denegó ambas solicitudes de reconsideración.

Inconforme con tal determinación, el 15 de febrero de 2024, Engiworks presentó ante esta Curia un recurso de *Apelación* por el cual le atribuyó al TPI la comisión de los siguientes errores:

> **A. ERRÓ EL TPI AL DICTAR SENTENCIA SUMARIA SIN CUMPLIR CON LOS CRITERIOS ESTABLECIDOS POR EL TRIBUNAL SUPREMO EN EL CASO DE *HOWARD FERRER V. PRTC*, 2022 TSPR 72[.]**
>
> **B. ERRÓ EL TPI AL CONCLUIR QUE NO EXISTE CONTROVERSIA DE HECHOS EN TORNO A SI SUN BORICUA PAL MUNDO INC. TIENE DERECHO A LA DEVOLUCIÓN DE LOS $2,500 EN CONTROVERSIA[.]**
>
> **C. ERRÓ EL TPI AL NO DAR POR ADMITIDOS LOS HECHOS REQUERIDOS EN EL REQUERIMIENTO DE ADMISIONES. SUN BORICUA PAL MUNDO INC. NO CONTESTÓ LOS MISMOS NI SOLICITÓ UNA PRÓRROGA DENTRO DEL TÉRMINO ESTABLECIDO EN LA REGLA 33 DE PROCEDIMIENTO CIVIL[.]**
>
> **D. ERRÓ EL TPI AL CONCLUIR QUE ENGIWORKS INCURRIÓ EN TEMERIDAD Y CONDENARLA [A] PAGAR $1,500 POR CONCEPTO DE HONORARIOS DE ABOGADO[.]**

En síntesis, Engiworks planteó que debemos revocar la *Sentencia Sumaria* recurrida porque existían hechos en controversia. Reiteró que el foro *a quo* incumplió con los criterios de *Howard Ferrer v. PRTC, supra,* respecto a las sentencias sumarias, al no permitirle completar el descubrimiento de prueba. Sostuvo, además, que el TPI tampoco le permitió oponerse a la *Moción para que se dicte Sentencia Sumaria Parcial* presentada por Sun Boricua. Alegó que Sun Boricua no demostró incontrovertiblemente que tenía derecho a la devolución del depósito y que, en cambio, ella misma

---

[27] *Íd.*, Anejo 1, pág. 1; *Íd.*, Anejo 2, pág. 2.

tenía derecho a retener la suma de $2,500.00 en concepto del pago de sus servicios de ingeniería invertida. Concluyó que el foro primario estaba vedado de utilizar una oferta de transacción para imputarle responsabilidad a Engiworks.

Por su parte, el 18 de marzo de 2024, compareció Sun Boricua por medio de un *Alegato del Apelado* y argumentó solo en cuanto al cuarto planteamiento de error. Específicamente, Sun Boricua arguyó que los tribunales ostentan amplia discreción para regular el ámbito del descubrimiento de prueba y que el foro primario ya había dictaminado sin lugar la solicitud de admisión del *Requerimiento de Admisiones* por incumplir con la Regla 34.1 de Procedimiento Civil, *supra*. Planteó, además, que le notificó a Engiworks las contestaciones a dicho requerimiento. Finalmente, indicó que el foro primario había expresado que el descubrimiento de prueba había culminado el 31 de enero de 2022 y que solamente permitió la coordinación de las deposiciones posterior a dicha fecha.

Inconforme también con el aludido dictamen del foro primario, el 20 de febrero de 2024, Sun Boricua presentó ante esta Curia su propio recurso de *Apelación* por el cual le atribuyó al TPI la comisión un (1) solo error:

> **EL TPI ERRÓ PORQUE DICTÓ UNA SENTENCIA SUMARIA CUANDO LOS DAÑOS ECONÓMICOS SUFRIDOS POR SUN BORICUA PAL MUNDO INC., COMO CONSECUENCIA DEL INCUMPLIMIENTO CONTRACTUAL DE ENGIWORKS, REQUIERE LA CELEBRACIÓN DE UN JUICIO.**

Por otra parte, el 19 de marzo de 2024, Engiworks presentó un *Alegato de la Parte Apelada* reiterando los mismos cuatro (4) errores y argumentos incluidos en su recurso de *Apelación*.

Luego de revisar los documentos que obran en autos, estamos en posición de resolver, primero delimitando el trasfondo normativo aplicable.

## II.

### A.

La solicitud de sentencia sumaria "es un mecanismo procesal que posibilita la ágil disposición de casos sin la celebración de un juicio, siempre que no [se] presenten controversias genuinas de hechos materiales". *Birriel Colón v. Supermercado Los Colobos*, 2023 TSPR 120 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022); *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 334 (2021). Esta solicitud podrá ser presentada a favor de la parte reclamante o a favor de la parte contra quien se reclame. Regla 36.1 de Procedimiento Civil, *supra*, y Regla 36.2 de Procedimiento Civil, *supra*, R. 36.2. En cuanto a la parte reclamante, esta podrá presentar dicha solicitud de sentencia sumaria en cualquier momento luego de haber transcurrido veinte (20) días a partir de la fecha de emplazamiento de la parte demandada, o después que la parte demandada haya notificado su propia solicitud de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite impuesta por el tribunal para culminar el descubrimiento de prueba. Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1. Por su parte, la parte contraria podrá presentar la suya, a partir de la fecha en que fue emplazado, pero no más tarde de treinta (30) días luego de la fecha límite para terminar el descubrimiento de prueba. Regla 36.2 de Procedimiento Civil, *supra*.

Por otro lado, la parte que conteste este tipo de moción deberá hacerlo dentro del término de veinte (20) días desde la notificación de la solicitud de sentencia sumaria. Regla 36.3 (b) de Procedimiento Civil, supra, R. 36.3 (b).

Ahora bien, a tenor con la Regla 36.3(e) de Procedimiento Civil, *supra*, R. 36.3 (e), procede dictar una moción de sentencia sumaria "sentencia sumaria si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, así como

las declaraciones juradas y alguna otra evidencia, si las hubiese, confirman la inexistencia de una controversia real y sustancial sobre algún hecho esencial y pertinente, y si el derecho aplicable así lo justifica". Véase, además, *Birriel Colón v. Supermercado Los Colobos*, *supra*; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Para ello, será necesario que la parte promovente establezca su derecho con claridad y demuestre que no existe controversia sustancial o real respecto a algún hecho material. *Birriel Colón v. Supermercado Los Colobos, supra*; *Meléndez González et al. v. M. Cuebas, supra*, págs. 109-110. En esa misma línea, nuestro más alto foro ha establecido que, un hecho material es "aquel que puede afectar el resultado de la reclamación de acuerdo al derecho sustantivo aplicable". *Meléndez González et al. v. M. Cuebas, supra*, pág. 110; *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

Por otra parte, la parte que se opone a la solicitud de sentencia sumaria deberá refutar los hechos materiales que entienda están en disputa con evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra*; *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, págs. 336-337. Ahora bien, si la petición de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte que se opone no puede descansar en meras alegaciones. *Birriel Colón v. Supermercado Los Colobos, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215. Aun así, aunque no se presente prueba para controvertir la evidencia presentada, ello no conduce a la concesión automática de una solicitud de sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos, supra*; *Fernández Martínez v. RAD-MAN San Juan III-D, LLC, supra*, pág. 337.

A tenor con lo anterior, y como asunto de umbral, es meritorio reiterar el estándar de revisión que este Tribunal debe seguir al

momento de revisar denegatorias o concesiones de solicitudes de sentencia sumaria.

En primer lugar, nos encontramos en la misma posición que el foro primario al momento de revisar las mociones de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118. En otras palabras, se aplicarán los mismos criterios que la Regla 36 de Procedimiento Civil, *supra*, R. 36, le exige al foro *a quo*. Sin embargo, no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI. Aun así, la revisión por parte de este Tribunal es *de novo* y debemos examinar el expediente de la forma más favorable hacia la parte que se opuso a la moción de sentencia sumaria, "llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

Segundo, al encontrarnos en la misma posición que el foro *a quo*, debemos revisar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas*, *supra*, pág. 118.

Tercero, nuestro Tribunal debe revisar si en realidad existen hechos materiales en controversia. Íd. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. Íd.

Cuarto y último, si este Tribunal encuentra que los hechos materiales están incontrovertidos, debemos revisar *de novo* si el TPI aplicó correctamente el derecho. Íd., pág. 119.

**B.**

Por otro lado, nuestro más alto foro ha establecido que en nuestra jurisdicción rige el principio de libertad de contratación o de autonomía de la voluntad por la cual las partes contratantes podrán

establecer pactos, cláusulas y condiciones que tengan por convenientes, siempre que lo pactado no sea contrario a la ley, la moral y las buenas costumbres. Artículo 1207 del *"Código Civil de Puerto Rico" Edición de 1930* (en adelante, Código Civil de 1930), 31 LPRA sec. 3372 (derogado); *Pérez Rodríguez v. López Rodríguez*, 210 DPR 163, 187 (2022); *Engineering Services International, Inc. v. Autoridad de Energía Eléctrica de Puerto Rico*, 209 DPR 1012, 1027 (2022).

Además, para que un contrato tenga validez el mismo requiere la concurrencia de tres (3) elementos; a saber: el consentimiento de los contratantes, un objeto cierto y la causa de la obligación. Artículo 1213 del Código Civil de 1930, 31 LPRA sec. 3391 (derogado); *SLG Irizarry v. SLG García*, 155 DPR 713, 723 (2001). Después del perfeccionamiento de un contrato, las partes quedarán obligadas a cumplir con lo expresamente pactado y con las consecuencias que se deriven del mismo, a tenor con la buena fe, al uso y a la ley. Artículo 1210 del Código Civil de 1930, *supra*, sec. 3375 (derogado); *Álvarez v. Rivera*, 165 DPR 1, 18 (2005); *Trinidad v. Chade*, 153 DPR 280, 289 (2001). Lo anterior pues, "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Artículo 1044 del Código Civil de 1930, *supra*, sec. 2994 (derogado); véase, además, *Universal Insurance Company v. Popular Auto, LLC*, 207 DPR 228, 238-239 (2021); *Rodríguez García v. UCA*, 200 DPR 929, 943 (2018). Consecuentemente, aquellos que de alguna forma contravengan sus obligaciones, deberán indemnizar por los daños y perjuicios causados. Artículo 1054 del Código Civil de 1930, *supra*, sec. 3018 (derogado); *Álvarez v. Rivera*, *supra*, pág. 18.

En esa misma línea, las reclamaciones *ex contractu* "se basan en el quebrantamiento de un deber que surge de un contrato expreso o implícito, y tienen por objeto que se cumplan las promesas

sobre las cuales las partes otorgaron su consentimiento". *Álvarez v. Rivera, supra,* pág. 18; *Ramos Lozada v. Orientalist Rattan Furniture, Inc.,* 130 DPR 712, 722 (1992); *Santiago Nieves v. A.C.A.A.,* 119 DPR 711, 716 (1987). Por lo tanto, para que proceda este tipo de reclamación, debió de haber habido un acuerdo que haya generado una "obligación, situación o estado de derecho resultante de un convenio" y que haya creado expectativas conforme a la actuación de las partes. *Álvarez v. Rivera, supra,* pág. 18; *Trinidad v. Chade, supra,* pág. 290.

En las obligaciones bilaterales, la obligación de los contratantes tiene por causa la prestación que se ha prometido en cambio. *Del Toro v. Blasini,* 96 DPR 676, 683 (1968). Además, estas:

> (1) Exigen el cumplimiento simultáneo de las prestaciones; (2) provocan la retención o abstención recíproca de cumplimiento, hasta que el otro obligado cumpla la prestación que le corresponde; (3) hacen nacer la facultad de pedir la resolución del contrato; (4) provocan la facultad alterna de pedir el cumplimiento específico y la correspondiente indemnización. (5) [s]i las partes así lo pactan, la resolución del contrato puede darse automáticamente, sin necesidad de pronunciamiento judicial. R. E. Ortega Vélez, *Lecciones: Derecho de Obligaciones,* San Juan, Ediciones Situm, 2012, pág. 23.

Cuando se trata de este tipo de obligaciones recíprocas, el Artículo 1077 del Código Civil de 1930, *supra,* sec. 3052 (derogado),[28] dispone que:

> La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe. **El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos**. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible.
> El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo.

---

[28] Adviértase que, si bien el nuevo *"Código Civil de Puerto Rico" de 2020* es del 1 de junio de 2020, *supra,* sus disposiciones no cobraron vigencia hasta ciento ochenta (180) días después de su aprobación. En el caso de marras, como el contrato acordado entre las partes fue pactado el 20 de octubre de 2020, aplican las disposiciones del derogado *"Código Civil de Puerto Rico" Edición de 1930, supra.*

Esto se entiende sin perjuicio de los derechos de terceros adquirentes, con arreglo a los Artículos 1247 y 1250, y las disposiciones de la Ley Hipotecaria. (Énfasis suplido); véase, además, *Álvarez v. Rivera, supra*, págs. 18-19.

En otras palabras, cuando una de las partes incumple con una obligación, el perjudicado puede exigir su cumplimiento o la resolución la misma. *Álvarez v. Rivera, supra*, págs. 18-19. Ello pues, "**a falta de correspondencia entre prestación y contraprestación [se le] debe proporcionar [a] la parte perjudicada la protección más enérgica posible**. Esta protección jurídica es justo que consiste en dejar a la elección del perjudicado la posibilidad de insistir en el cumplimiento de la obligación que ha quedado pendiente o pedir la resolución de la obligación". M. E. García Cárdenas, *Derecho de Obligaciones y Contratos*, 2da ed. rev., MJ Editores, 2017, pág. 108 (*citando a* J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed. rev., Barcelona, Ed. Bosch, 1985, T. I, Vol. II, pág. 119); véase, además, G. Velázquez, *Las Obligaciones según el Derecho Puertorriqueño*, Santurce, Ed. Equity Publishing Corporation, 1964, págs. 75-76, 78-79.

Ahora bien, para que proceda la resolución se requiere que las obligaciones sean recíprocas, el incumplimiento sea grave y de forma tal que se frustre el propósito de la obligación. *García Cárdenas, op. cit.*, págs. 108-109 (*citando a* J. L. Lacruz Berdejo, *Elementos de Derecho Civil, Parte General del Derecho Civil*, 1990, T. I, Vol. III, pág. 200). Además, no basta con el mero incumplimiento, sino que se puede dar la resolución cuando el deudor exprese su evidente intención de no cumplir, en el evento de que se haya tornado imposible el cumplimiento. *García Cárdenas, op. cit.*, pág. 108 (*citando a* L. Diez Picazo, *Fundamentos de Derecho Civil Patrimonial*, Tecnos Madrid, 1986, Vol. I, pág. 874). Cónsono con lo anterior, "para que pueda considerarse motivo de resolución, el incumplimiento tiene que referirse a una obligación recíproca

principal". J. R. Vélez Torres, *Derecho de Obligaciones*, 2<sup>da</sup> ed. rev., San Juan, EJC, 1997, pág. 67. Además, el tribunal "[d]eberá pronunciar la resolución si estima que la inejecución invocada por el demandante es tal que indudablemente no hubiera contratado de haberla previsto. Si no, acordará simplemente al demandante resarcimiento de daños". Velázquez, *op. cit.*, pág. 79. Para ello, el tribunal puede elegir entre tres (3) soluciones:

> Primera: Rechazar la demanda de resolución, con resarcimiento de daños y abono de intereses por el perjuicio que el hecho de la inejecución ha acarreado al demandante. Segunda: Acordar al demandado un plazo para ejecutar su obligación, si hay causas que lo justifiquen. **Tercera: Pronunciar la resolución del contrato. En este último caso, el tribunal puede, además, condenar al demandado, si la inejecución la causa su falta, a reparar el daño que la resolución del contrato puede entrañar para el demandante**. Íd. (Énfasis suplido).

A esos fines, la obligación recíproca es principal "cuando la misma sirve de causa para que la otra parte contratante se obligue también". Vélez Torres, *op. cit.*, pág. 67. Por otra parte, las obligaciones accesorias son incidentales a la obligación principal, la cual no fue el "motivo determinante del negocio ni de la asunción por la otra parte de una obligación principal recíproca". Íd.; *García Cárdenas, op. cit.*, pág. 111. Consecuentemente, ante el incumplimiento de una obligación accesoria, ello da lugar a la indemnización de daños, más no puede provocar la resolución. *Vélez Torres, op. cit.*, págs. 67-68.

**Por lo general, "la resolución de una relación obligatoria tiene efectos retroactivos, debiendo devolverse las partes las prestaciones, si alguna, que se hayan entregado, o colocarse ambas en el mismo estado en que se encontraban al momento de contraer la obligación"**. Íd., pág. 72 (Énfasis suplido); véase, además, *Velázquez, op. cit.*, págs. 79-80.

**C.**

También es norma conocida que los requerimientos de admisiones "sirven como un instrumento sencillo y económico para delimitar las controversias del caso". *Rivera Prudencio v. Mun. San Juan*, 170 DPR 149, 171 (2007) (citando a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. JTS, 2000, T. I, pág. 565). Nuestro máximo foro ha expresado que la Regla 33 de Procedimiento Civil, *supra*, tiene el propósito de "aligerar los procedimientos para definir y limitar las controversias del caso y proporcionar así un cuadro más claro sobre éstas". *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, 144 DPR 563, 571 (1997); *Rivera Prudencio v. Mun. San Juan, supra*, pág. 171. Específicamente, por medio de un requerimiento de admisiones se puede requerir que se admita la veracidad de cualquier materia cubierta por la Regla 23.1 de Procedimiento Civil, *supra*, R. 23.1, que pueda estar relacionada con cuestiones u opiniones de hechos o con la aplicación de la ley a los hechos. Informe de Reglas de Procedimiento Civil, Secretariado de la Conferencia Judicial y Notarial, 2008, pág. 361; *Rivera Prudencio v. Mun. San Juan, supra*, pág. 171. El efecto de ello es relevar a la parte contraria de tener que presentar prueba del hecho admitido. Informe de Reglas de Procedimiento Civil, *supra*, pág. 361; *Rivera Prudencio v. Mun. San Juan, supra*, pág. 171.

En lo pertinente, la Regla 33 (a) de Procedimiento Civil, *supra*, R. 33 (a) establece que:

> Cada materia sobre la cual se requiera una admisión deberá formularse por separado. Todas las cuestiones sobre las cuales se solicite una admisión se tendrán por admitidas, a menos que dentro de los veinte (20) días de haberle sido notificado el requerimiento, o dentro del término que el tribunal concediese mediante una moción y notificación, la parte a quien se le notifique el requerimiento le notifica a la parte que requiere la admisión una contestación suscrita bajo juramento por la parte o una objeción escrita sobre la materia.

En otras palabras, "[d]e no contestarse el requerimiento de admisiones dentro del término provisto se entenderá que hubo una admisión tácita de las cuestiones sobre las que se solicitó admisión". Informe de Reglas de Procedimiento Civil, *supra*, pág. 362. De este modo, una admisión se considerará definitiva a menos que el tribunal autorice su retiro o enmienda. Regla 33 (b) de Procedimiento Civil, R. 33 (b).

No empece lo anterior, el tribunal debe interpretar la Regla 33 (b) de Procedimiento Civil, *supra*, conforme a la política pública de "favorecer en los casos apropiados que el conflicto se dilucide en los méritos. Debe de ejercer especial cuidado cuando se trata de una admisión tácita, o sea, por no haberse contestado el requerimiento dentro del término establecido para ello". *Audiovisual Lang. v. Sist. Est. Natal Hnos.*, *supra*, págs. 573-574. Por lo tanto, aunque dicha regla es mandatoria, "al aplicarla e interpretarla no se puede permitir que consideraciones técnicas prevalezcan en detrimento de la justicia sustancial". Íd., pág. 575.

**D.**

Es norma reiterada que los tribunales gozan de amplia discreción para dirigir el descubrimiento de prueba. *Izquierdo II v. Cruz,* 2024 TSPR 20; *Cruz Flores v. Hospital Ryder Memorial, Inc.,* 210 DPR 465, 496 (2022). También es harto conocido que el proceso de descubrimiento de prueba debe ser amplio y liberal. *Cruz Flores v. Hospital Ryder Memorial, Inc.*, *supra*, pág. 496; *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR 194, 213 (2023). Dicho proceso, sin embargo, está limitado por dos (2) razones: (1) la prueba que se pretenda descubrir debe ser pertinente; y (2) aunque sea pertinente, no puede ser privilegiada o se excluirá del alcance de dicho descubrimiento. *Izquierdo II v. Cruz, supra*; *Ponce Adv. Med. V. González*, 197 DPR 891, 898 (2017).

Cónsono con lo anterior, la Regla 23.1 (a) de Procedimiento Civil, *supra*, R. 23.1 (a), indica que:

Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. Véase, además, *Izquierdo II v. Cruz*, *supra*; *Casanovas v. UBS Financial*, 198 DPR 1040, 1055 (2017).

Aun así, en nuestro sistema jurídico impera un descubrimiento de prueba extrajudicial que fomenta la flexibilidad y la cooperación entre las partes. *Casanovas v. UBS Financial*, *supra*, págs. 1054-1055 (*citando a Vicenti v. Saldana*, 157 DPR 37, 54 (2002)). En esa misma línea, la Regla 34.1 de Procedimiento Civil, *supra*, expresamente dispone que:

Cuando surja una controversia en torno al descubrimiento de prueba, el tribunal sólo considerará las mociones que contengan una certificación de la parte promovente en la que indique al tribunal en forma particularizada que ha realizado esfuerzos razonables, con prontitud y de buena fe, para tratar de llegar a un acuerdo con el abogado de la parte adversa para resolver los asuntos que se plantean en la moción y que éstos han resultado infructuosos. *Cruz Flores v. Hospital Ryder Memorial, Inc.*, *supra*, pág. 496; *Casanovas v. UBS Financial*, *supra*, pág. 1055.

**E.**

La temeridad ha sido definida por nuestro máximo foro como aquellas "actuaciones en que un litigante promueve un pleito que pudo evitarse, que provoquen la prolongación indebida del trámite judicial o que obliguen a la otra parte a incurrir en gastos innecesarios para hacer valer sus derechos". *Mena Pamias v. Jiménez Meléndez*, 212 DPR 758 (2023); *SLG González Figueroa v. SLG et al.*, 209 DPR 138, 147 (2022); *Pérez Rodríguez v. López*

*Rodríguez, supra*, págs. 192-193; Regla 44.1 (d) de Procedimiento Civil, supra, R. 44.1 (d). Asimismo, la imposición de honorarios de abogado procede cuando cualquier parte o abogado(a) haya actuado temeraria o frívolamente. Regla 44.1 de Procedimiento Civil, *supra*, R. 44.1. De ser así, el tribunal deberá imponer el pago de una suma en concepto de honorarios de abogado que entienda proceden por tal conducta. Íd.

El propósito de la imposición de honorarios de abogado es penalizar al litigante perdidoso que por su "obstinación, terquedad, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, los gastos, el trabajo y los inconvenientes de un pleito". *Pérez Rodríguez v. López Rodríguez, supra*, pág. 193 (citando a *Puerto Rico Oil Company, Inc. v. Dayco Products, Inc.*, 164 DPR 486, 511-512 (2005)). Su concesión, no obstante, recae en la sana discreción del tribunal. *Mena Pamias v. Jiménez Meléndez, supra*, pág. 780; *SLG González Figueroa v. SLG et al., supra*, pág. 150; *VS PR, LLC v. Drift-Wind, Inc.*, 207 DPR 253, 277 (2021); *Torres Vélez v. Soto Hernández*, 189 DPR 972, 993 (2013). Tan pronto el tribunal determine que la parte actuó temerariamente, la imposición de honorarios de abogados es mandatorio. *Pérez Rodríguez v. López Rodríguez, supra*, pág. 192; *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 211 (2013). Por ello, los foros apelativos solo deben intervenir con dicha determinación cuando "surja claramente un abuso de discreción". *Mena Pamias v. Jiménez Meléndez, supra*, pág. 780. Sin embargo, dichos foros intervendrán cuando la determinación del foro primario surja mediando un claro abuso de discreción; si se realizan planteamientos complejos y novedosos aun no resueltos en nuestra jurisdicción; o si posee argumentos para rebatir lo que sostiene la parte contraria. *Pérez Rodríguez v. López Rodríguez, supra*, pág. 193; *Gómez Márquez v. Periódico el Oriental*

*Inc.*, 203 DPR 783, 807 (2020); *Rodríguez de Oller v. Transamerica Occidental Life Insurance Company*, 171 DPR 293 (2007).

Analizada la controversia bajo el marco doctrinal previamente esbozado, nos hallamos en posición de resolver.

**III.**

Según se relató, el TPI emitió una *Sentencia Sumaria* por la que declaró con lugar la *Demanda* del caso de marras, y ordenó a Engiworks a devolverle a Sun Boricua la cantidad de $2,500.00, otorgada por esta como depósito, y a satisfacer $1,500.00 en concepto de honorarios de abogado. Subsiguientemente, el 28 de septiembre de 2023, Sun Boricua presentó una *Reconsideración a la Sentencia dictada el 28 de septiembre de 2023*. Solicitó del foro primario que aclarase que la *Sentencia Sumaria* era parcial y que el caso debía continuar en torno a los daños económicos solicitados como consecuencia del incumplimiento de Engiworks. Por su parte, Engiworks presentó una *Solicitud de Reconsideración* el 4 de octubre de 2023. En síntesis, sostuvo que el TPI no le otorgó oportunidad de contestar la *Moción para que se dicte Sentencia Sumaria Parcial* presentada por Sun Boricua, y que el foro *a quo* incumplió con los criterios establecidos en el caso *Howard Ferrer v. PRTC, supra,* respecto a las sentencias sumarias. Sostuvo además que la prueba anejada a dicha solicitud de sentencia sumaria no probaba de forma incuestionable que Sun Boricua tenía derecho a la devolución del depósito de $2,500.00. Sin embargo, el foro primario denegó ambas solicitudes de reconsideración.

Inconforme, Engiworks y Sun Boricua acudieron de forma independiente en revisión ante nos. Por tratarse de la revisión de la misma *Sentencia Sumaria* recurrida, ambos casos fueron consolidados.

Luego de un análisis sosegado de la normativa aplicable, los hechos pertinentes y del expediente ante nuestra consideración, concluimos que el foro primario no incidió al ordenar a Engiworks a devolverle a Sun Boricua el depósito de $2,500.00, pero erró al darle finalidad al pleito de marras cuando existe controversia sobre los posibles daños económicos sufridos por Sun Boricua a causa del incumplimiento de contrato por parte de Engiworks.

Por un lado, Engiworks presentó cuatro (4) planteamientos de error ante nos: (1) con relación a los criterios que ha de seguir el TPI previo a dictar una sentencia sumaria, a tenor con la *Sentencia* del caso de *Howard Ferrer v. PRTC, supra*; (2) la admisibilidad de las cuestiones versadas en un requerimiento de admisiones, a tenor con el plazo de veinte (20) días dispuestos por la Regla 33 de Procedimiento Civil, *supra*; (3) la imposición de honorarios de abogado por temeridad incurrida por esta; y (4) la devolución a Sun Boricua de la cantidad de $2,500.00 otorgado en concepto de depósito, luego de pactar el contrato con Sun Boricua respecto al proyecto SNB-01. Por otro lado, como único error, Sun Boricua planteó que erró el foro primario al no dictar una sentencia sumaria parcial, pues arguyó que existe controversia sobre los posibles daños sufridos por esta como consecuencia del incumplimiento de contrato en cuestión.

En cuanto al primer planteamiento de error presentado por Engiworks, esta arguyó que el foro *a quo* no le brindó la oportunidad de culminar el descubrimiento de prueba, conforme a los criterios establecidos sobre las sentencias sumarias en *Howard Ferrer v. PRTC, supra*. En lo pertinente, sostuvo que nuestro máximo foro expresó en dicho caso que "[t]odo lo expresado sobre el trámite de sentencia sumaria presupone que las partes han podido llevar a cabo el descubrimiento de prueba necesario". Íd., pág. 582. Arguyó Engiworks que cuando el foro *a quo* dictó la *Sentencia Sumaria*

recurrida estaba vigente una orden del TPI posponiendo la adjudicación de dicha sentencia mientras Engiworks completaba su descubrimiento de prueba, y que, al emitir la aludida *Sentencia Sumaria* no se le concedió oportunidad de culminar el descubrimiento de prueba y de oponerse a la *Moción para que se dicte Sentencia Sumaria Parcial* presentada por Sun Boricua. No obstante, no le asiste razón.

Tal como explicamos en la sección anterior, previo a evaluar si el TPI aplicó correctamente el derecho, y como asunto de umbral, este Tribunal debe seguir los criterios establecidos en *Meléndez González et al. v. M. Cuebas*, *supra*, para revisar denegatorias o concesiones de solicitudes de sentencia sumaria; asunto que fue reiterado por el máximo foro en *Howard Ferrer v. PRTC, supra*. El primer paso de dicho estándar es revisar el expediente *de novo* de la forma más favorable para la parte que se opuso a la solicitud de sentencia sumaria, y aplicar los mismos criterios de la Regla 36 de Procedimiento Civil, *supra*. En armonía con ello, el segundo pilar exige que revisemos que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Meléndez González et al. v. M. Cuebas*, supra, pág. 118. Como es conocido, la parte reclamante podrá presentar una solicitud de sentencia sumaria en cualquier momento luego de haber transcurrido veinte (20) días, a partir de la fecha de emplazamiento de la parte demandada, o después que la parte demandada haya notificado su propia solicitud de sentencia sumaria, pero no más tarde de los treinta (30) días siguientes a la fecha límite impuesta por el tribunal para culminar el descubrimiento de prueba. **Por otro lado, la parte que conteste este tipo de moción deberá hacerlo dentro del término de veinte (20) días desde la notificación de la solicitud de sentencia sumaria**. Regla 36.3 (b) de Procedimiento Civil, supra. Es decir,

existen varias oportunidades durante el transcurso del pleito para presentar la solicitud de sentencia sumaria, y el único límite que se dispone es que no surja luego de transcurridos los treinta (30) días después de culminado el descubrimiento de prueba.

En el caso de autos, **el descubrimiento de prueba culminó el 31 de diciembre de 2022**. Aun así, el 6 de marzo de 2023, el foro primario concedió "**30 días a la parte demandada** para presentar nueva representación legal, quien deberá comunicarse con el licenciado Pérez **para que coordinen el descubrimiento de prueba que serían las deposiciones**. Si la parte demandada realizará descubrimiento de prueba adicional, deberá notificarlo al Tribunal".[29] (Énfasis suplido). Para el 13 de marzo de 2023, Sun Boricua presentó una *Moción para que se dicte Sentencia Sumaria Parcial*. Si bien el foro primario dictaminó con lugar la petición de Engiworks realizada el 14 de marzo de 2023 para posponer la consideración de la solicitud de sentencia sumaria presentada por Sun Boricua, **Engiworks tuvo <u>más</u> de veinte (20) días desde la notificación de la solicitud de sentencia sumaria para oponerse; a saber, <u>más de seis (6) meses y nunca lo hizo</u>**. Por lo tanto, a tenor con la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, el foro primario podía adjudicar la *Moción para que se dicte Sentencia Sumaria Parcial* sin la oposición de Engiworks.

Como tercer criterio, este Tribunal debe revisar si en realidad existen hechos materiales en controversia. De haberlos, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son los hechos materiales que están en controversia y cuáles son incontrovertidos. De una revisión exhaustiva del expediente, no surge duda de los hechos dispuestos en la *Sentencia Sumaria*:

---

[29] Apéndice de la *Apelación*, Anejo 49, págs. 165-166.

1. El 20 de octubre de 2020 Sun Boricua Pal Mundo Inc. suscribió un acuerdo con Engiworks Inc. para el diseño y manufactura de una pieza denominada entre las partes como "cutter roller made of delrin".

2. Engiworks Inc. acordó realizar los trabajos de ingeniería y manufactura del "cutter roller made of delrin" por un costo total de $4,235.83 y acordó entregar la pieza en un máximo de cinco (5) semanas.

3. Engiworks requirió a Sun Boricua un depósito equivalente al 50% del costo total del proyecto. Sun Boricua pagó a Engiworks la cantidad de $2,500.00.

4. Sun Boricua solicitó la devolución del dinero entregado como depósito por la cantidad de $2,500.00 ya que Engiworks no entregó la pieza. Engiworks ofreció devolver el depósito.[30]

Como se explicó en la sección anterior, lo acordado es ley entre las partes, y ante la contravención de sus obligaciones, se deberá indemnizar por los daños y perjuicios causados. Para que proceda una reclamación *ex contractu* debe de haber un acuerdo que haya generado una obligación y haya creado expectativas entre las partes. En lo pertinente, las obligaciones bilaterales se tienen por causa una obligación principal o el motivo determinante del negocio. A tenor con el Artículo 1077 del Código Civil de 1930, *supra* (derogado), ante un incumplimiento de dichas obligaciones, la parte perjudicada podrá exigir su cumplimiento o la resolución del contrato. Para que proceda dicha resolución, el deudor deberá expresar su evidente intención de no cumplir, en el evento de que la obligación se torne imposible. De proceder la resolución, surgen sus efectos retroactivos; esto es, **la devolución de las prestaciones** o colocarse ambas partes en el mismo estado en el que se encontraban al momento del convenio. Además, de determinar la resolución del contrato, si la inejecución del contrato la causa su falta, el tribunal podrá condenar a parte demandada a indemnizar a la parte perjudicada por el daño que la resolución le pudo haber causado a esta.

---

[30] *Íd.*, Anejo 9, págs. 20-21.

En el caso de marras, no existe duda de que para que Engiworks comenzara su trabajo, Sun Boricua emitió un pago de $2,500.00, correspondiente a un cincuenta porciento (50%) del total acordado. No está en controversia tampoco que Engiworks admitió que estuvo imposibilitado de ejecutar la pieza porque no existía la tecnología para ello. Entonces, como la causa del contrato alcanzado por las partes era dicha pieza, ante el incumplimiento por parte de Engiworks, es forzoso concluir que procede la resolución del convenio y la devolución del pago de $2,500.00. Consecuentemente, el TPI no incidió al resolver sumariamente la devolución de dicho depósito.

Sin embargo, existe duda sobre cuáles, si alguno, fueron los daños económicos sufridos por Sun Boricua a causa del incumplimiento de contrato por parte de Engiworks. Por ende, el foro primario erró al desestimar la *Demanda* en su totalidad sin celebrar un juicio.

En cuanto al segundo planteamiento de error, Engiworks arguyó que incidió el TPI al denegar su solicitud para dar por admitidas las cuestiones incluidas en el *Requerimiento de Admisiones* que le cursó a Sun Boricua y concluir que incumplió con la Regla 34.1 de Procedimiento Civil, *supra.* Sostuvo, en cambio que, como Sun Boricua no contestó el referido requerimiento de admisiones dentro del término de veinte (20) días para realizarlo, a tenor con la Regla 33 de Procedimiento Civil, *supra*, procedía dar por admitidas, de forma automática, las cuestiones comprendidas allí. No le asiste razón.

Como expusimos en la sección anterior, existe una política pública de atender los casos en sus méritos, y los tribunales deben ejercer especial cuidado cuando se trata de admisiones tácitas por no haberse contestado el requerimiento de admisiones en el término dispuesto por la Regla 33 de Procedimiento Civil, *supra.* Lo cierto es

que, aunque el plazo de veinte (20) días para contestar el requerimiento es mandatorio, los tribunales no pueden permitir que consideraciones técnicas prevalezcan en detrimento de la justicia. En el caso de autos, el 18 de octubre de 2021, Engiworks le informó al foro primario de haberle cursado a Sun Boricua, en lo pertinente, un *Requerimiento de Admisiones*. Luego de varios trámites procesales, el 10 de noviembre de 2021, Engiworks solicitó del foro primario dar por admitidas los asuntos comprendidos en dicho requerimiento. Ese mismo día, Sun Boricua se opuso y alegó que Engiworks no se comunicó primero con la representación legal de Sun Boricua, previo a acudir al tribunal, conforme a la Regla 34.1 de Procedimiento Civil, *supra.* El mismo 10 de noviembre de 2021, el TPI, en el ejercicio de su discreción, denegó la solicitud de Engiworks por esta haber incumplido con la Regla 34.1 de Procedimiento Civil, *supra,* la cual exige, que previo a acudir al tribunal para que se ordene el descubrimiento de una prueba, la parte promovente deberá certificar de forma particularizada que realizó esfuerzos razonables, con prontitud y de buena fe para tratar de llegar a un acuerdo con la representación legal de la parte adversa con el propósito de resolver los asuntos probatorios en controversia y que los mismos fueron infructuosos. Además, surge del expediente que, el 21 de enero de 2022, Sun Boricua le informó al foro *a quo* de haberle notificado a Engiworks la *Contestación a Requerimiento de Admisiones e Interrogatorio.* Por lo tanto, el foro primario, en el ejercicio de su discreción y conforme a la antes dicha política pública de atender los casos en sus méritos, interpretó la Regla 33 de Procedimiento Civil, *supra,* de la forma más favorable para atender el caso de marras en sus méritos.

Además, dicho dictamen emitido por el foro primario también es cónsono con las normas reiteradas por nuestro máximo foro de que los tribunales gozan de amplia discreción para dirigir el

descubrimiento de prueba, y que, en nuestro sistema jurídico, impera un esquema de descubrimiento de prueba extrajudicial que fomenta flexibilidad y cooperación entre las partes, asunto con el cual Engiworks incumplió. Consecuentemente, el TPI no erró ni abusó de su discreción al denegar la admisibilidad automática de los asuntos incluidos en el *Requerimiento de Admisiones* cursado a Sun Boricua.

Por último, sostuvo Engiworks que erró el TPI al imponerle temeridad. No le asiste razón, pues del expediente del caso de marras surge una clara obstinación y terquedad por parte de esta para dilatar los procedimientos sobre el descubrimiento de prueba, en específico para la pronta solución de los hechos materiales incontrovertidos que justificaban la devolución del depósito entregado por Sun Boricua.

## IV.

Por los fundamentos antes expuestos, resolvemos confirmar en parte y, por ende, revocar parcialmente la *Sentencia Sumaria* recurrida. Consecuentemente, devolvemos el caso al foro primario para la celebración de un juicio donde se pueda desfilar prueba sobre los posibles daños económicos sufridos por Sun Boricua ante el incumplimiento de contrato por parte de Engiworks y subsiguiente resolución de las obligaciones acordadas entre las partes.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones